EPISCOPAL CITY MISSION *vs.* WILLIAM APPLETON & others.

Suffolk.   March 18. — 24, 1875.   AMES & ENDICOTT, JJ., absent.

Land was conveyed, for a nominal consideration, to a religious society, its successors and assigns, " upon and subject to the condition " that the society was to continue to hold, occupy and improve the land and chapel standing thereon, for the support of religious worship in conformity with the usage of the Protestant Episcopal Church; " and also upon the further condition " that no building should be erected upon a certain portion of the land conveyed, until after an adjoining owner had ceased to keep open a contiguous strip of land, or until after such time as the chapel should cease to be used as a chapel in accordance with the above provision. *Held*, upon a petition in equity, brought by the society after the locality had become unfit for the purposes for which the estate was conveyed, that the deed did not create a condition, and that a sale should be decreed.

PETITION IN EQUITY by the Episcopal City Mission, a religious society incorporated by the St. of 1844, *c.* 92, against William Appleton, Charles H. Appleton, Sarah E. Lawrence, and Hetty S. Coolidge, the heirs at law of William Appleton, and residuary devisees under his will, and the Attorney General, as representing the poor of the city of Boston, praying leave to sell certain real estate on Purchase Street in Boston, and to reinvest the proceeds under the direction of the court. After the filing of the petition Charles H. Appleton died, leaving a will, by which he subjected his estate to certain trusts, and F. Gordon Dexter and John A. Burnham, the trustees under his will, appeared and filed an answer. The other respondents either did not appear, or appeared and filed no answer.

Hearing before *Endicott*, J., who reported the case for the consideration of the full court, in substance as follows :

On January 8, 1847, William Appleton, since deceased, conveyed to the petitioner, its successors and assigns, the estate which it now prays leave to sell. The conveyance was for the purpose of promoting the religious welfare of the poor of Boston, and although in form expressed to be " in consideration of one

dollar, and other valuable considerations," was without payment of any valuable consideration, but solely upon consideration of charity. At the time of the making of the conveyance the chapel therein mentioned was, and always afterwards while it existed continued to be, used and occupied as a missionary chapel, having its sittings free to the poor of the city of Boston.

The deed, after the description of the property, contained the following clause:

" The premises above described are conveyed by me upon and subject to the condition that the said corporation of the Episcopal City Mission are to continue to hold, occupy and improve the land and chapel for the purpose for which they are now used and occupied; namely, for the support of the worship of Almighty God in conformity to the doctrine, discipline and worship of the Protestant Episcopal Church in the United States of America; and also upon the further condition that no building or superstructure of whatever kind is to be erected on the portion of the land above conveyed which lies on the northeasterly side of the chapel as now built, and between said chapel and the strip of seven feet in width of land this day conveyed to Charles H. Brown, until after such time as said Brown or his representatives or assigns shall build upon the said strip of seven feet in width, or shall cease to keep said strip of land open and free from any building or superstructure, or until after such time as said chapel shall cease to be used as a chapel for the worship of Almighty God in conformity to the doctrine, discipline and worship, as above described."

At the time of the execution of the deed Charles H. Brown was the owner and occupant of a dwelling-house lying northeasterly of the said chapel and fronting towards the same, and upon a passageway extending between said dwelling-house and said chapel, of which passageway he was also the owner, and had purchased from the said Appleton a strip of land seven feet wide bordering upon said passageway, thus increasing the width of the said passageway seven feet, which is the said Brown's seven foot strip mentioned in the deed.

The chapel named in the said deed was destroyed by fire on November 10, 1872, and insurance thereon was afterwards paid to the petitioner. Owing to the growth of the city of Boston since

the year 1847, and the change in the character as to population of
that part of the city in which the said estate is situated, (it hav-
ing come to be occupied almost exclusively by business stores and
warehouses,) and also to the reduction of the depth of said estate
by the city taking part of the land for the purpose of widening
the street, the locality has become entirely unfit for the purposes
for which the estate was conveyed; and the objects of the charity
for which the original conveyance was made will be better pro-
moted by the sale of the estate conveyed, and the reinvestment
of the proceeds (including the money received for insurance and
for the land taken for widening the street) in the purchase of
land in another part of the city, and the purchase or erection of
a chapel thereon, and in proper provision for the maintenance
thereof.

Upon these facts the case was reported to the full court for
its judgment whether such sale and reinvestment could be, under
the terms of the said deed, and ought to be, upon the facts stated,
directed by the court, and for such order and decree as the court
might see fit to make in the premises.

*C. Browne*, for the petitioner.

*J. C. Gray, Jr.*, for the trustees under the will of Charles H.
Appleton.   1. The provision in question is strictly and accurately
framed to impose a condition.

2. The validity and force of the condition are not affected by
the fact that they are contained in a deed to a charitable corpora-
tion.   *Guild* v. *Richards*, 16 Gray, 309.   *Austin* v. *Cambridge-
port Parish*, 21 Pick. 215.

3. There are no words of trust and confidence coupled with
the words of condition, as in *Sohier* v. *Trinity Church*, 109 Mass.
1, and *Stanley* v. *Colt*, 5 Wall. 119.

4. The second condition shows that the first is a true condition
of which the grantor's heirs may take advantage.   If the two
conditions are construed as directions only, they are repugnant:
for the first says the land shall be used only for a chapel, and the
second says what may be done with it when it is not used as a
chapel.   The object of inserting in the second condition the pro-
vision that the land may be all built over when it ceases to be
used for a chapel, was to prevent Brown claiming that this con-
ditional clause was inserted as a restriction for his benefit, which

would bind the heirs of the grantor, even after they entered for breach of the first condition.

The meaning of the provision in the second condition is this: No building shall be erected to the northeast of the chapel, but this shall not be construed to prevent the heirs of the grantor, when they have entered for condition broken, from building as they please. The provision cannot mean that the grantees in the deed may build as they please, because this is repugnant to the first condition.

5. The covenant of special warranty contains the words, "subject to the conditions aforesaid." This shows that the grantor did not mean to warrant against those persons claiming under him, who also claimed under the condition, and therefore proves that he did contemplate the entry of his heirs for breach of condition.

*R. H. Dana, Jr.,* in reply, was not called upon.

GRAY, C. J. Although the words "upon condition," in a conveyance of real estate, are apt words to create a condition, any breach of which will forfeit the estate, yet they are not to be allowed that effect when the intention of the grantor, as manifested by the whole deed, is otherwise. *Sohier* v. *Trinity Church,* 109 Mass. 1, 19, and cases cited. *Attorney General* v. *Wax Chandlers' Co.* L. R. 6 H. L. 1. We are of opinion that such an intention does appear on the face of the deed from William Appleton to the Episcopal City Mission.

The purpose of the conditional paragraph is to define and regulate the use of the estate by the grantee, not by the grantor or his heirs. There is no reason for giving to the words at the beginning of this paragraph, "upon and subject to the condition," a more technical construction than to the like words introducing the second clause, "and also upon the further condition." But both clauses cannot be construed as conditions; because, upon that construction, a breach of the first would, upon entry by the grantor or his heirs, forfeit the whole estate, and leave nothing in the grantee to which the last part of the second clause could apply. The second clause can therefore have effect only by way of restriction, and the first clause must have a like interpretation and effect.

It follows that upon the facts found by the justice of this court before whom the case was heard, the petition should be

*Granted.*