[Filed July 2, 1888.]

# CITY OF PORTLAND, APPELLANT, v. JAMES TER-WILLIGER, RESPONDENT.

DEED—CONSTRUCTION—NATURE OF ESTATE.— Defendant agreed to convey land to the plaintiff, and plaintiff agreed that one fourth of the land should be used as a cemetery, and to expend four hundred dollars in building a road to the same; that the proceeds of the sales of burial lots should be used in improving the grounds, and that one burial lot be conveyed to each of the grantors. A deed was executed pursuant to this agreement upon the "expressed terms, conditions, and reservations," and in consideration that plaintiff perform such stipulation; but no right of entry was reserved, nor was it provided that said estate should cease on non-performance. The grantee was put in possession. *Held*, that such deed conveyed an absolute estate.

SAME—BREACH OF CONDITION—CITY ORDINANCE.—Such stipulations are not violated by a city ordinance prohibiting the burial of the dead within the corporate limits of plaintiff, which was made operative over such cemetery by a legislative act enlarging the boundaries of the city so as to embrace the same.

APPEAL from Multnomah County.

*W. H. Adams, R. & E. B. Williams,* and *A. H. Tanner,* for Appellant.

*Gearin & Gilbert,* for Respondent.

STRAHAN, J.—This is an action of ejectment, commenced by the city of Portland to recover a tract of land within the corporate limits of said city, containing about five acres, and known

as the "Old City Cemetery." A trial in the Circuit Court resulted in a verdict and judgment for the defendant, from which the plaintiff has appealed. Numerous exceptions were taken upon the trial, and the same have been argued on this appeal. Such of them as appear to require it, I will now proceed to examine.

The plaintiff to prove title introduced in evidence a deed dated February 26, 1855, from James Terwilliger and wife, and Finice Carruthers and Elizabeth Thomas, by the terms of which ten acres of land were conveyed to the city of Portland, one half of which was on the claim of the defendant, being the land in controversy, and the other half being a part of the land claim of Elizabeth Thomas. After the granting and descriptive clauses in said deed, it proceeds as follows: "But upon these further expressed terms, conditions, and reservations, to wit, that one-fourth part of said ten acres of land shall be set apart and reserved forever, and used for and as a public burial ground; that the said tract of land shall be laid off into such lots as the said city of Portland, by its proper officers, may elect to do, and shall be sold and disposed of from time to time to purchasers, and that the proceeds arising from the sale of lots by said city of Portland shall be applied, in the first place, to the enclosure of said ten acres of land with a good and sufficient fence, and the remainder to clearing, adorning, and ornamenting said cemetery grounds; and that as a further condition the said city of Portland shall and will, immediately after the execution in full of these presents, make and deliver, without cost or charge to the grantors of this deed, a deed of conveyance to said James Terwilliger of one family burial lot in said cemetery, and to Finice Carruthers of one family burial lot therein." And in another part of said deed it is recited that it is made "for and in consideration of the covenants, promises, and agreements contained in a certain instrument of writing, dated August 24, 1854, made and entered into between the aforenamed parties of the one part, and the city of Portland, a body corporate and politic in fact and in law, on the other part, and in *consideration of the same on the part of the city of Portland having been done, per-*

*formed, and concluded,* and in further consideration of the sum of one dollar to us in hand paid," etc.

So much of the operative part of said agreement as is necessary to a proper understanding of the questions presented is as follows: "Now, therefore, the said James Terwilliger and Finice Carruthers, in consideration of the promises and agreements of the city of Portland hereinafter named, do hereby, for themselves, their heirs, executors, administrators, and assigns, covenant and agree to and with the city of Portland, a corporation, as aforesaid, that they will well and truly make, execute, acknowledge, and deliver, or cause so to be, all and every such deed or deeds, conveyance or conveyances, whatsoever, which shall be needful in conveying and confirming unto said city of Portland, a corporation as aforesaid, *a good, absolute, and clear estate and title, free* of all encumbrances, of, in, and to ten acres of land, to be in square form, for the purpose of a city cemetery, and said land to be situated on a line between the said Terwilliger's and Carruthers' land claims, five acres of which shall be taken from the north side and five acres from the south side of said division line, and all to be on the west side of and next to the territorial road from said Portland to Brown's Ferry, and that said deed or deeds, conveyance or conveyances, shall be by them so made, executed, acknowledged, and delivered, when the said city of Portland shall have expended the sum of four hundred dollars in building a road between said city and said cemetery land, and shall have laid off said land into such lots as they may elect to do; and that until said deed or deeds shall be executed as aforesaid, the said city of Portland shall peaceably and quietly hold, enjoy, and use the said land as a cemetery. And the said city of Portland, a corporation duly established by law as aforesaid, for and in consideration of the premises aforesaid, and of the covenants and agreements of the said James Terwilliger and Finice Carruthers, as *hereinbefore recited,* does hereby promise and agree to and with said Terwilliger and Carruthers, that it, the said city, will expend the sum of four hundred dollars in the building of a road from said city to said cemetery, and that one-fourth part of said ten acres of land shall

be reserved as and for a public burial ground, and that the proceeds of all lots which may be sold from and out of said cemetery grounds shall be expended in enclosing said ten acres of land with a good substantial fence, and otherwise improving and adorning said cemetery lands; and that to said Terwilliger and to said Carruthers each the city of Portland shall and will convey one family burial lot, and that said conveyances shall be made by said city upon the execution of said Terwilliger and Carruthers of their deed or deeds of said land to said city of Portland, as aforesaid."

Upon the trial in the court below the respondent contended that the stipulations in the deed to the city of Portland were conditions subsequent, and the failure on the part of the city to keep and perform any or either of them defeated its estate in the lands granted, and that the defendant might re-enter as for condition broken. The respondent introduced evidence tending to prove that said land had not been used as a cemetery and burial ground since 1879; that the enclosure had been allowed to fall into decay, and that the land was no longer enclosed at the time the respondent re-entered in 1885; that a large number of bodies which had been buried there had been taken up and removed, and that there were but few bodies buried there now; that the ground had never been laid off in lots for burial purposes; that none of said lots had ever been sold, and that no deed for a family burial lot had ever been delivered by the city to respondent. To all of this evidence the plaintiff objected; but its objections were overruled and exceptions duly taken. The respondent then offered in evidence section 12 of ordinance No. 3983, which punishes by fine or imprisonment any person who shall inter the body of any deceased person in any lot, place, or premises within the corporate limits of said city, to which also objections were made, which being overruled, exceptions were duly taken.

The court, in instructing the jury, undertook to construe the deed to the city, which was its duty, and in construing it particularly pointed out each one of the specifications in said deed called conditions subsequent, and in effect instructed the jury that

each one constituted a condition subsequent, and that if such conditions, or any of them, were broken, the estate of the city in said property might be terminated by the re-entry of the respondent. This is the general effect of the instructions, to which exceptions were duly taken. The court further instructed the jury: "If you find from the evidence in this case that the city authorities, by an ordinance, prohibited the burial of the dead there within these grounds, then those two conditions are broken." To which, also, an exception was duly taken. The court further instructed the jury as follows: "Sometime in 1885 the legislature took in the Terwilliger portion of this cemetery into the corporate limits. This ordinance (§ 12 of ordinance No. 3983, *supra*) remained unrepealed, and operates on the Terwilliger portion as it had before operated upon the Carruthers portion, and from the passage of this act in 1885, taking that portion of the Terwilliger land into the city limits, it became unlawful for anybody to bury the dead in that portion. I instruct you that this prohibition is a breach of the conditions of this deed." An exception was also duly taken to this instruction on the part of the city. Counsel asked the court to instruct the jury as follows: "The terms, conditions, and reservations mentioned in the deed from James Terwilliger and wife and Finice Carruthers and Elizabeth Thomas to the city of Portland, and in evidence in this case, are not conditions subsequent, but must be construed as covenants merely, and a breach of them would not entitle the grantors in said deed to re-enter said premises as of first estate therein."

1. In *Raley* v. *Umatilla County*, 15 Or. 172, we had occasion to consider the doctrine of estates upon condition, and particularly upon condition subsequent, and reached the conclusion that courts will not favor the forfeiture of estates, and that the rule of the common law that estates upon condition may be defeated by non-performance of the condition subsequent is to be construed strictly; and that if there is any other reasonable construction which can be given to a deed so as to avoid a forfeiture, it ought to receive such construction. In *Wier* v. *Simmons*, 55 Wis. 637, the language of the deed was: "Upon the express

condition," etc.; but the court held that such language did not create an estate upon condition, and said: "The rule is well settled that conditions subsequent which work a forfeiture are not favored in the law, and no language will be construed into such condition contrary to the intent of the parties, when such intent can be derived from a consideration of the whole instrument, or from the circumstances attending the execution thereof; nor will the language used be construed into such condition subsequent when any other reasonable construction can be given to it. The rule was thus forcibly stated by the late chief justice in the case of *Laws* v. *Hyde*, 39 Wis. 345, 356, and the rule there announced is approved in these cases: *Lyman* v. *Babcock*, 40 Wis. 503; *Morse* v. *Ins. Co.* 30 Wis. 534; *Jackson* v. *Silvernail*, 15 Johns. 278; *Hadley* v. *Hadley*, 4 Gray, 140; *Osgood* v. *Abbott*, 58 Me. 74; *Merrifield* v. *Cobleigh*, 4 Cush. 178." So it was said in *Woodworth* v. *Payne*, 74 N. Y. 196: "Conditions in grants are not favored in law, and hence they must be clearly expressed. (*Craig* v. *Wells*, 11 N. Y. 315.) They are also to be construed with great strictness, because they tend to destroy estates, and vigorous exaction of them is a species of *summum jus*, and in many cases hardly reconcilable with conscience." And other authorities are to the same effect. (*First Methodist Episcopal Church of Columbia* v. *Old Columbia Public Ground Company*, 103 Pa. St. 608; *Harner* v. *Chicago, Milwaukee & St. P. R. R. Co.* 38 Wis. 165; *Hoyt* v. *Kimball*, 49 N. H. 322; *Paschall* v. *Passmore*, 15 Pa. St. 295; *McKnight* v. *Krentz*, 51 Pa. St. 232; *Mills* v. *Evansville Seminary Co.* 58 Wis. 135; *Cross* v. *Carson*, 8 Blackf. 138; 44 Am. Dec. 744, and note.)

2. Neither do the words "in trust, nevertheless, and upon condition always." To use the premises for public worship in a deed of land to a religious society necessarily create a condition. (*Sohier* v. *Trinity Church*, 109 Mass. 1; *Stanley* v. *Colt*, 5 Wall. 119; *Chapin* v. *Harris*, 8 Allen, 594.) In *Wright* v. *Watkins*, 2 Best & Smith, 232, the words "upon this express condition" used in a will were held not to create an estate upon condition. These words were followed by others directing a legatee to pay certain bequests. So land conveyed to a religious

society, its successors and assigns, for a nominal consideration, upon and subject to the condition " that the society was to continue to hold, occupy, and improve the land and chapel standing thereon for the support of religious worship in conformity with the usage of the Protestant Episcopal Church," and also upon the further condition " that no building should be erected upon a certain portion of the land conveyed until after an adjoining owner had ceased to keep open a contiguous strip of land, or until after such time as the chapel should cease to be used as a chapel in accordance with the above provision," did not create an estate upon condition. (*Episcopal City Misson* v. *Appleton*, 117 Mass. 326.) So in *Paschall* v. *Passmore, supra,* the words " under this condition, nevertheless," in a deed did not make the estate granted conditional.

3. We may now turn to the deed from Terwilliger to the city of Portland, and the contract which preceded it. These writings are so connected together by the subject-matter, and by reference in the deed to the contract, that it cannot properly be construed without reference to the contract. It is probable that the city of Portland had, prior to the twenty-fifth day of August, 1854, the date of the agreement, under some arrangement with the defendant, or in contemplation of the execution of said agreement, been let into the possession of the land in controversy; if not before that time, certainly at the time said agreement was made, for the writing declares " that until said deed or deeds shall be executed as aforesaid, the said city of Portland shall peaceably and quietly *hold, enjoy, and use* the said land for the purpose of a cemetery." By the terms of this agreement the city of Portland bound itself to perform several things : (1) To expend the sum of four hundred dollars in the building of a road from said city to said cemetery; (2) that one-fourth part of said ten acres of land should be reserved as for a public burial ground; (3) that the proceeds of all lots sold should be expended in enclosing said ten acres of land with a good substantial fence, and otherwise improving and adorning said cemetery lands; (4) to convey to Terwilliger and Carruthers, each one family buiral lot, upon the execution of their deed to the

city of Portland. The deed recites that it was made for and in consideration of the covenants, promises, and agreements contained in said instrument of writing, dated August 25, 1854, "and in consideration of the same on the part of the city of Portland having been *done, performed, and concluded,*" etc. The same requirements in substance are repeated in the deed after the habendum clause, and following the words, "but upon these further express terms, conditions, and reservations." The court below construed each of these specifications to be conditions subsequent, the non-performance of which defeated the estate. In this construction of these writings, I think that the court erred. The granting clause of the deed does not in any manner undertake to limit the use, but by way of general description the granted premises are referred to as "that certain piece, parcel, quantity, or tract of land situated in said county of Multnomah, *and now appropriated, claimed, and possessed* by the said city of Portland, for *and as a cemetery* for said city;" and the habendum clause recites that said premises are "for the sole and exclusive use and purpose as a cemetery for said city of Portland."

4. I doubt very much whether the defendant could, in any view of the subject, be permitted by the covenants in his deed to allege or prove the city of Portland had not performed the several covenants on its part to be performed by the terms of the agreement, for the reason it is expressly declared in the deed that the *same* on the part of the city of Portland had been done, performed, and concluded on the part of the city of Portland at the time of the execution of said deed. If this language refers to the city's part of said agreement, as I am inclined to think it does, the defendant has by his solemn admission under seal precluded himself from proving to the contrary. It is true the same requirements are repeated in the deed; but if the plaintiff had already performed them, the repetition would impose no new or additional duty or obligation.

5. This deed does not provide that if the city of Portland shall cease to use said premises as a cemetery its title thereto shall terminate, nor is any right of re-entry reserved by the

express terms of the deed. It is true these provisions are not necessary where the estate is in fact conveyed upon condition subsequent, but they sometimes become very important in construing the language of the conveyance, when its meaning would otherwise be left in doubt, and to doubt on this subject is to decide against the condition. The purposes for which this land was to be used, I think, ought to be considered in construing these writings. It was conveyed to the city as a resting place for the dead, and at the time it was conveyed no doubt all parties to the transaction supposed that it would be so used for an indefinite period of time for that purpose. The rapid growth and development of the city was not then hardly thought of. Under such circumstances it seems to me improbable that any of the parties to this deed intended that by virtue of any of its provisions that right of the city and its grantees should be defeated, and the land again be subjected to the private ownership of the defendant. Under the defendant's construction, no difference how populous the city may become, or how much the health of its inhabitants might be endangered by a grave-yard in its center, the interments must go on, at least until the ground is all occupied. If interments stop by order of the city in the exercise of its undoubted police powers, or for any cause, its title as well as the title of all who had purchased lots is terminated by the supposed condition. The defendant would again become re-invested with the estate, including the tombs and their contents, and might exercise such control and dominion over them as any other private property is subject to. I feel safe in saying that such was not the intention of the parties to these writings at the time they were executed, and a change of circumstances since they were made cannot affect their construction.

6. Looking at the writings themselves, their language, the situation of the property, the object and method of its acquisition by the city, and all the circumstances attending the transaction, so far as it is proper to consider them, I am inclined to think what the defendant claims are conditions in this deed must be held to be covenants, and that their non-observance in no man-

ner affects the defendant's title to the property. If the defendant should fail to perform such covenants, it would be liable to an action for damages, in which the defendant might recover all such damages as he may have sustained, unless such covenants are repealed by the ordinance prohibiting the burial of the dead in the city. This construction is strengthened by the fact that the contract of August 25, 1854, contains no words which could be tortured into a condition. It contains mutual covenants, nothing more, and it would hardly seem probable that without any new agreement, so far as appears, or new or additional consideration, the parties to that contract would use language which would, or which was designed to entirely change the rights, duties, and obligations already existing between them. The rule under consideration is thus stated by a standard author: "So if the supposed condition of an executed grant amounts to an agreement on the part of the grantee to do certain things, it will not be held to defeat the estate if he fails to perform. In order that the condition in such case should defeat the estate, the grant must be in its nature executory." (2 Wash. Real Prop. p. 4.) So in *Rawson* v. *Inhabitants of School District No. 5, in Uxbridge,* 7 Allen, 123, Bigelow, C. J., says: "It is sometimes said when a deed is made . . . . in consideration of an act to be done or service rendered, it will be interpreted a conditional estate. But this is an exception to the general rule, and *is confined* to cases where the subject-matter of the grant is in its nature executory, as of an annuity to be paid for services to be rendered, or a privilege to be enjoyed. But ordinarily the failure of the consideration of the grant of land, or the non-fulfillment of the purpose for which a conveyance by deed is made, will not of itself defeat an estate." And *Laberee* v. *Carleton,* 53 Me. 211, is to the same effect.

7. But there is another view of this subject, which I think ought not to be passed without notice. Conceding that the estate was vested in the city of Portland on condition subsequent as to the continued use and occupation of the same as a cemetery, it becomes material to inquire what effect did the prohibition of that use by the common council have upon the title.

That power was delegated by the State to the city of Portland under the general description of *police power.* Judge Dillon, referring to this power, says: "That every citizen holds his property subject to the proper exercise of this power, either by the State legislature directly, or by public corporations, to which the legislature may delegate it. . . . . Still he owns it subject to this restriction, namely, that it must be so used as not to injure others, and that the sovereign authority may, by police regulations, so direct the use of it that it shall not prove pernicious to his neighbors or the citizens generally. These regulations rest upon the maxim, *salus populi suprema lex.*" (2 Dillon on Municipal Corporations, § 141.) *Coates* v. *The Mayor, Alderman, and Commonalty of the City of New York,* 7 Cowan, 585, is a leading case on this subject. The question involved was the right of the city of New York, acting through its proper legislative department, to prohibit the burial of the dead within the corporate limits of said city. The defendant sought to justify by showing that the interment took place in a part of a close called Trinity Church Yard, situate in the first ward of the city of New York, mentioned, etc., in certain letters patent, dated May 6, 1697, granted under authority of William III., king of Great Britain, etc., whereby divers persons were constituted a body corporate by the name of the rector and inhabitants of the city of New York, in communion of the Protestant Episcopal Church of England."

The letters patent confirmed to that corporation, and to their successors forever, the piece of land, as and for a church-yard, cemetery, and burying-place, with the rights, customs, fees, perquisites, profits, etc., as the same were then in the possession of that corporation; that at and immediately after the grant the land was appropriated by the corporation as a cemetery and burying-place, for the interment of dead bodies within the same, as and for certain fees, perquisites, and profits then and there charged, demanded, taken, and received for such interments, respectfully, to the use and benefit of the corporation, etc.; that the defendant was the sexton, and in the service and employment of the church, and as such had charge or custody

of the vault or tombs, and intered and deposited the dead body as he lawfully might. But the defense was disallowed, the court saying: "But if there be a covenant for quiet enjoyment it is repealed. We held in the *Brick Presbyterian Church* v. *City of New York*, 5 Cowen, 538, in relation to this very by-law, that it repealed all covenants entered into by the corporation, incompatible with the by-law; that it was equivalent, in this respect, to an act of the legislature, rendering the enjoyment, which was the object of the covenant, unlawful." The case in 5 Cowen, *supra*, is even stronger. There the defendant had conveyed the premises to those whom the plaintiffs represented. By the deed the lessees covenanted for the payment of an annual rent, and also that within ten years the premises should be enclosed in a fence, and that a church should be built thereon, or the premises should be used as a cemetery, and also that they should never be used for private secular uses. The defendants covenanted that the lessees and their assigns, paying the rent and performing the conditions, should quietly use, occupy, and enjoy the premises, without any let or hindrance of the defendants, or any other person, etc. The court held in substance in that case that the defendants had no power as a party to make a contract which should control or embarrass their legislative powers and duties. Their enactments in their legislative capacity are to have the same effect upon their individual acts as upon those of any other persons, or the public at large, and no other effect. The liability of the defendants, therefore, upon the covenant in question must be the same as if it had been entered into by an individual, and the effect of the by-law upon the same as if that by-law had been an act of the State legislature. . . . " The court then held that the by-law repealed the covenant, and that the defendant was not liable thereon, citing 1 Raym. Ld. 317, 320, to this effect: "For the difference when an act of Parliament will amount to a repeal of a covenant, and when not, is this: when a man covenants not to do a thing which was lawful for him to do, an act of Parliament comes after and compels him to do it, then the act repeals the covenant; and *vice versa.* But when a man covenants not to do a thing

which was unlawful at the time of the covenant, and afterwards an act makes it lawful, the act does not repeal the covenant." And these cases have been since followed in New York, and have never been questioned. (*The Mayor etc.* v. *Second Ave. R. R. Co.* 32 N. Y. 261; *Britton* v. *The Mayor etc. of N. Y.* 21 How. Pr. 251; *The Opening of Albany Street*, 6 Abb. Pr. 273.)

8. It would seem to follow from what has been already said that the city lost no rights and forfeited no property by the exercise of its undoubted police powers. It was a public legislative power vested in it, to be exercised for the purpose of securing and promoting the health, peace, and good order of the city, and it could not be fettered in any manner, either by contract or otherwise. It is true the burial of the dead at the place in question was lawful at the date of the deed, but the common council by the passage of the ordinance rendered it unlawful. Now assuming this deed to have been made upon a condition subsequent, if this ordinance had been in force at the date of the deed, the condition would have been unlawful, and the grantee would have taken the estate freed from the condition. (*Weathersby* v. *Weathersby*, 13 Smedes & M. 685; *Rogers* v. *Sebastian*, 21 Ark. 440; *Randall* v. *Marble*, 69 Me. 310; *Barksdale* v. *Elam*, 30 Miss. 694.) And there is authority for holding that the same result follows where there is a change in the government; it becomes illegal or contrary to the policy of the laws. (*Wheeler* v. *Moody*, 9 Tex. 372.) And the same principle seems to be recognized in *Davis* v. *Gray*, 16 Wall. 203, where the head note is as follows: "When the State of Texas had made to a railroad company a large grant of lands, defeasible if certain things were not done within a certain time by the company, the fact that the so-called secession of the State and her plunging into the war, and prosecuting it, rendered it impossible for the company to fulfill the conditions in *law, abrogated them.*"

The ruling of the court below being inconsistent with what is here said, the same was erroneous. The judgment will therefore be reversed, and the cause remanded for a new trial.

STRAHAN, J., on rehearing. — Counsel for respondent on this

application contend that the city of Portland could not, by prohibiting the burial of the dead within the corporate limits of the city, destroy the alleged condition upon which the city held the property, and thus by her own act defeat the condition and hold the property freed from it. All of the authorities cited in the opinion as to the effect of a condition, if unlawful when made, or if it become afterward unlawful, are against counsel's position. But by oversight the opinion does not contain a clear statement of the facts on this point. Section 12 of ordinance No. 3983 makes it penal to inter a dead body in any lot, place, or premises within the corporate limits of the city of Portland. This ordinance was passed and approved on the thirteenth day of October, 1883. At that time the demanded premises were not within the corporate limits of the city; but afterwards, on the twenty-fifth day of November, 1885 (Acts 1885, pp. 103, 104), the legislature passed an act enlarging the boundaries of the city so as to include the property in controversy. The ordinance prohibiting the burial of the dead within the corporate limits of the city thus became operative over the new territory included in the city, but not by the act of the corporate authorities of the city of Portland.

It was by the act of the legislature, extending and enlarging the corporate limits of the city, that said ordinance was made to affect the property in controversy. I think the effect would be the same in either case; but under these facts it cannot be said that the ordinance in question was made operative on this property by the immediate act of the city or its officers.

I have carefully re-examined the conclusions already announced and do not find any sufficient reason to change or modify them. The motion for rehearing must therefore be denied.