THEODORE BRAGDON vs. JOHN D. BLAISDELL.

Hancock.    Opinion January 31, 1898.

*Deed.    Covenant.    Partition.*

The plaintiff, Bragdon, and defendant, Blaisdell, were each owners of separate wharves, and the defendant was the owner of a quarry. The defendant conveyed the quarry to the plaintiff by quitclaim deed containing the clause: "It is also agreed and made a part of the condition and consideration of this deed that all stone taken from the above described lot shall be shipped from said Bragdon's wharf and landing, except that all stone which for any reason cannot be shipped as aforesaid, the same shall be shipped over J. D. Blaisdell's wharf and no other." At the same time, the plaintiff conveyed one undivided half of the quarry, by quitclaim deed containing the above clause, to the defendant. Thereafterwards partition of the quarry was had, and the defendant, by himself and lessees, shipped stone from his part of the quarry, so held by him in severalty, from his own wharf when they might have been shipped from the plaintiff's wharf, who sued to recover damages therefor, as a breach of the defendant's covenant above mentioned. *Held;* that the agreement in question was meant to apply to the management of the quarry so long only as it remained common property; and that the partition having severed the title, and cancelled the agreement, the action cannot be maintained.

*Also;* that the agreement has none of the elements of covenants that run with the land; and a future grantee would hold the land free of it.

ON REPORT.

The case is stated in the opinion.

*H. E. Hamlin and H. Boynton,* for plaintiff.

The land conveyed was bound by the covenant to have its stone product shipped over the wharves of the respective parties. The covenants run with the land; and the clause in question is not a condition subsequent upon breach of which forfeiture could be claimed and entry made. These covenants were inserted in the deeds for the express purpose of giving the parties a right of action for damages in case of breach. Such restrictions are to be fairly and reasonably interpreted according to their apparent purpose. A restrictive covenant runs with the land if created for the benefit of the land conveyed, or of that of which the grantor remains the

owner, and intended to be annexed to such land.   1 Jones, Law of
R. P. etc. §§ 647, 648, 735, 784, 816; *Jeffries* v. *Jeffries*, 117
Mass. 184; *Attorney General* v. *Gardiner*, Id. 492; *Ayling* v.
*Kramer*, 133 Mass. 12; *National Bank* v. *Segur*, 39 N. J. L. 173;
2 Wash. R. P. (5th Ed.) p. 316.

It makes no difference that Blaisdell did not sign the latter deed.
He accepted it according to its terms and the land was already
bound by the deed of the whole.   2 Wash. on R. P. (5th Ed.) p.
299; *Burbank* v. *Pillsbury*, 48 N. H. 475; *Kellogg* v. *Robinson*, 6
Vt. 276; *Atlantic Dock Co.* v. *Leavitt*, 54 N. Y. 35; *Finley* v.
*Simpson*, 22 N. J. 311.

Before the partition the covenant was binding upon the whole
land undivided; after the partition it was still binding upon the
whole land in its divided interests between Blaisdell and Bragdon.

*A. W. King and L. B. Deasy*, for defendant.

SITTING: EMERY, FOSTER, HASKELL, WHITEHOUSE, STROUT,
SAVAGE, JJ.

HASKELL, J.   The plaintiff and defendant were each the
owners of separate wharves, and the defendant was the owner of a
quarry.   The defendant conveyed the quarry to the plaintiff by
quitclaim deed, containing the clause:

"It is also agreed and made a part of the condition and consid-
eration of this deed that all stone taken from the above described
lot shall be shipped from said Bragdon's wharf and landing except
that all stone which for any reason can not be shipped as aforesaid,
the same shall be shipped over J. D. Blaisdell's wharf and no
other."

At the same time, the plaintiff conveyed one-undivided half of
the quarry, by quitclaim deed, to defendant, containing the clause
above quoted.   Thereafterwards, partition of the quarry was had
to be held by the plaintiff and defendant in severalty; and defend-
ant, by himself and lessees, proceeded to ship stone from his part
of the quarry, so held by him in severalty, from his own wharf
when they might have been shipped from plaintiff's wharf, who

sues to recover damages therefor, as a breach of defendant's covenant before mentioned.

The action is covenant broken. Plaintiff can not sue on the covenant in his deed to defendant because he did not sign and seal the deed. The remedy, if any there be, is assumpsit and not covenant. *Baldwin* v. *Emery*, 89 Maine, 496 ; *Maine* v. *Cumston*, 98 Mass. 217 ; *Locke* v. *Homer*, 131 Mass. 93. Nor is it plain how plaintiff can maintain his action on the covenant in defendant's deed to him for want of a breach thereof. By that deed the plaintiff took the whole title to the quarry, and he might deliver the stone upon his own wharf as he pleased. Any covenant that he might do so would seem to have been unnecessary, and inoperative, and become merged in his fee.

But assuming that both deeds were contemporaneous and became effectual as an indenture, so that the covenants were mutual and each party was bound to the other thereby, what was their purpose, and what is their scope and effect? Did they attach to the land either as a condition subsequent or covenant real that ran with it? It cannot be both, and it can hardly be held a condition.

The supposed covenant recites : " It is also agreed and made a part of the condition and consideration of this deed " that stone from the quarry shall be shipped from plaintiff's wharf when feasible. When considered with the whole transaction apparent from the deeds themselves, they fairly negative any such intention of the parties, and that intention must govern. *Bray* v. *Hussey*, 83 Maine, 329. The strongest words of condition will not work a forfeiture of the estate unless they were so intended to operate. The absence of a clause for re-entry may signify that no condition was intended, when its presence may make such intent plain. *Post* v. *Weil*, 115 N. Y. 361; *Avery* v. *N. Y. Cent. R. R. Co.*, 106 N. Y. 142; *Clement* v. *Burtis*, 121 N. Y. 708 ; *Countryman* v. *Deck*, 13 Abb. 110 ; *Hoyt* v. *Kimball*, 49 N. H. 322 ; *Episcopal City Mission* v. *Appleton*, 117 Mass. 326; *Stanley* v. *Colt*, 5 Wall. 119.

Nor does a consideration named as a condition always imply one. *Laberee* v. *Carleton*, 53 Maine, 211 ; *Ayer* v. *Emery*, 14 Allen,

67 ; *Martin* v. *Martin,* 131 Mass. 547 ; *Morrill* v. *Wabash· Ry.,* 96 Mo. 174; *Rainey* v. *Chambers,* 56 Tex. 17 ; *Risley* v. *McNiece,* 71 Ind. 434; *Portland* v. *Terwilliger,* 16 Oreg. 465.

If the words raise a doubt whether a condition or covenant be meant, they are always to be construed as a covenant. Jones on Real Property, § 635, and numerous cases cited. Moreover, if the clause, which is the same in both deeds, were considered a condition, it would apply to the whole quarry. The supposed condition does not attach to the land. For illustration see *Jewell* v. *Lee,* 14 Allen 145. A future grantee would hold the land free of it. No other reasonable construction can be given to it. It is not for the benefit of and in aid of a title, but, if anything of a nature that attaches to the soil, a servitude or incumbrance upon it, a fee on condition that any future conveyance of the title would become subject to. It does not purport to be an incumbrance, a claim upon the land, nor does it subject the land to any easement, servitude or right against the owner. It is the personal agreement of tenants in common to ship stone quarried from the common land at a particular wharf.

What did the parties mean by the clumsy method taken to serve their respective interests? Plaintiff had a wharf, and defendant had a wharf and quarry. For some reason, he wanted plaintiff to become half owner in the quarry, and plaintiff wanted the first chance of the business of the quarry for his wharf. To accomplish that result, deeds were made, containing an agreement for the purpose. Clearly the parties contemplated a continued common ownership in the quarry, and perhaps joint operations in working it, preference being given to plaintiff's wharf. The agreement rather related to a joint operation, to business, than to the title to the land. The parties meant to give plaintiff's wharf the benefit of their operations in the quarry to the extent of its capacity and then use the defendant's wharf. They did not contemplate partition in severalty. Their agreement does not fit such a condition. So long as the quarry was held in common, the agreement was sensible ; but when held in severalty, it became impracticable. Unless it attaches to the land qualifying the estate, it cannot be made effec-

tive as a personal covenant of the parties after partition, without complications and burdens little thought of when it was made. It has none of the elements of covenants that run with the land. They follow the title, not by assignment, but by conveyance of the land. They are ordinarily in aid of the title, not in derogation of it. They usually strengthen it, not weaken it. It can, therefore, be considered neither a condition, nor a covenant real that runs with the land, follows the title. Nor is it a limitation upon the estate conveyed, creating a servitude in favor of the wharves. The parties became tenants in common of the quarry and owned in severalty their respective wharves, neither of which appears to be contiguous to the quarry. It is unlike the cases that limit or restrict the use of the land conveyed or cast some additional burden upon it,—as the building of fences or maintaining partition walls. They attach to the land by imposing a duty upon the owner or by restricting his use. *Newell* v. *Hill*, 2 Met. 180; *Bronson* v. *Coffin*, 108 Mass. 175.

Nor is it a stipulation to remove incumbrances or the like as in *Pike* v. *Brown*, 7 Cush. 133, and *Baldwin* v. *Emery*, supra, 89 Maine, 496. It is but a personal agreement between tenants in common as to the management of the common property, and when the property ceases to be held in common it has no application. This is the only reasonable construction that can be given to it. The parties, perhaps, did not contemplate a change of the conditions between them. They had no idea of a partition of the land, or they never would have created their common interests as they did. Changed conditions many times arise not in contemplation of parties where they attempt to agree as to their interests, that, although unforeseen, cause such agreements to become absurd, or burdensome and unreasonable. In such cases, where it fairly appears that it was not intended that a contract should apply to such changed conditions, the reasonable and proper construction of it is that it does not apply. So in this case, we think the agreement in question was meant to apply to the management of the quarry so long only as it remained common property, and that when partition ensued, it became functus officio, inoperative. It

had served its intended purpose, and by partition, it was denuded of subject matter upon which it could operate. We, therefore, consider that partition severed the title and cancelled the agreement.

*Judgment for defendant.*