## LOS ANGELES UNIVERSITY et al. v. SWARTH et al.

### (Circuit Court of Appeals, Ninth Circuit. March 4, 1901.)

#### No. 612.

1. DEEDS—CONSTRUCTION—EFFECT OF CONDITIONS.
   The consequence of the nonfulfillment of a condition on which real estate is conveyed is a forfeiture of the estate; hence, where the deed provides that there shall be no reversion after a certain time for the failure to perform any conditions therein imposed, after the expiration of such time the estate is freed from such conditions, and the grant becomes absolute.

2. SAME—CONDITION OR COVENANT.
   If it is doubtful whether a clause in a deed was intended as a covenant or a condition, a court will incline against the latter construction.

3. SAME.
   A deed conveying land to a university corporation recited that the conveyance was made "upon the express conditions and for the consideration hereinafter named, to wit:" First, that the land should be devoted exclusively as a part of the campus of the university, and that no buildings should be erected thereon except those devoted to university purposes; second, that at least one building, to cost not less than a sum named,

should be erected within a specified time; third, that in case of the abandonment of the premises for university purposes, or nonuser, or use for other purposes, before a stated time, the title should revert, but that there should be no reversion after the date so designated. *Held*, that the second and third clauses stated conditions from which the land became freed on the expiration of the time named, but that the first, in view of the circumstances and purpose of the conveyance, must be construed as a covenant running with the land, for the breach of which the grantor could recover damages, or which he could enforce performance of in equity in a proper case.

4. COVENANTS—SUIT TO ENJOIN BREACH—PARTIES ENTITLED TO MAINTAIN.

Complainants alleged that they conveyed certain land to defendant corporation upon a covenant that it should be used exclusively as a campus for a university, being induced thereto by representations made by defendant's representatives as to the great benefit which would accrue from the location and maintenance of the university there to the owners of property in the vicinity. They further alleged that defendant or its lessee was proceeding to erect derricks and other structures on the land for the purpose of drilling for oil thereon, and converting it into an oil field, in violation of such covenant, and thereby preventing its use as a campus, and they prayed for an injunction restraining defendant from making such use of the land. *Held*, that in the absence of any allegation that complainants were, at the time of filing their bill, the owners of any property in the vicinity which could be injuriously affected, it did not appear that they retained any interest in the covenant which entitled them to maintain the suit.

5. SAME—BREACH—WHAT CONSTITUTES.

A corporation organized for the purpose of establishing and maintaining an educational institution, and to which land has been conveyed upon a covenant that it shall be used exclusively as a campus for such institution, does not substantially violate such covenant by permitting a lessee to occupy a portion of the land for the purpose of drilling for oil thereon, where it appears that such occupation will probably be but temporary, and will not permanently injure the land for the purpose for which it was granted, and that the school is to be continued, and the revenue derived by the corporation from such use of the land devoted to its maintenance.

Appeal from the Circuit Court of the United States for the Southern District of California.

This is an appeal from an order granting a preliminary injunction. The suit was brought by the appellees to restrain the appellants from converting and using part of the campus of the Los Angeles University for the purpose of excavating, drilling, and digging into the land for oil, and from erecting, on and over the surface of the land, buildings and derricks, and from converting the campus into an oil field and a place for conducting an oil business, to the injury and damage of the land as a campus for a university or an institution of learning and education. The bill alleges, among other things, that in the year 1886 the complainants and John S. Maltman and G. R. Shatto were the owners of large tracts of land adjoining the city of Los Angeles, situated on the city's western boundary, which said land has since become part of the municipality of Los Angeles by annexation; that during the year 1886 a number of persons, representing and being members of the religious organization known as the "Baptist Denomination in Southern California," devised and projected a plan for the establishment and maintenance of a university for educational purposes, to be located in or near the city of Los Angeles, state of California, to be under the control of the Baptist Denomination; that members, representatives, and agents of the said Baptist Denomination represented to complainants that they were authorized by said denomination to search out the most suitable location that could be secured for a campus, and land that could be obtained by donation to aid in the establishment of said university; that the agents and representatives of said denomination

requested and urged complainants to donate their interests in the land described in the bill of complaint for part of a campus for said university, and to this end they set forth the many benefits that would accrue to the owners of lands in the vicinity of such an institution, (in) drives, walks, trees, shrubs, and flowers, and college buildings, residences for professors, and the many sales of lots and lands that would be made to those preferring homes amid refinement and culture, where their children could have the advantages of a Christian education; that in furtherance of said plans, and to assist the establishment of said university, many subscriptions of money and lands were thus solicited and secured from owners of land in the vicinity of said campus; that to this purpose complainants and J. S. Maltman and G. R. Shatto agreed to subscribe, and did subscribe, as a gift for a campus, 15 acres of land, to be used exclusively as a campus for said proposed university; that the agents, representatives, and members of the said Baptist Denomination and others associated themselves in the establishment of said university, and organized for that purpose, under the laws of the state of California, a corporation known as the "Los Angeles University." Complainants allege that they joined in said subscription, and promised to give the interest owned by them in said land for a campus, relying upon the representations made, and believing that the same would be carried out, and that a university that would be a seat of learning under the control and patronage of the organization known as the "Baptist Denomination" would be erected on said land, and that the same would be used exclusively and only as a campus for said university, and for no other purpose, and for all time; that thereafter, on September 16, 1886, in compliance with the promise made and set forth in said subscription, complainants and John S. Maltman made a deed of grant conveying to said Los Angeles University the land described in the bill, comprising 7½ acres, being the south half of said campus; that there was no money consideration given or received for said deed, and no consideration whatever from the grantee for the land other than the promise to establish and maintain a university, and to use the said land exclusively as a campus therefor, and for all time; that one of the conditions of the conveyance, and a covenant set forth in said bill, was the following: "First, that the said land shall be used exclusively as a part of the campus of said university, and no buildings shall be erected thereon except those devoted to university purposes." It is further alleged that, after the execution of said deed, the defendant the Los Angeles University erected, or caused to be erected, one building on the said campus, and the said building has been used almost continuously for educational purposes and as a dormitory for teachers and pupils, but that there never was established a university, as promised, and according to the terms and conditions of the articles of incorporation of said defendant the Los Angeles University; and there has never been conducted and maintained upon said premises by said defendant, its agents or lessees, more than an academic school for the education of children and students in academic grades and classes, and part of the time only primary schools have been conducted; and for about four years last past a nonsectarian boarding and military school for boys has been conducted by lessees of the said building and campus. It is also alleged that at all times since the conveyance of said land to the grantee, until on or about the 9th day of April, 1900, the whole of said land was used as a campus for such educational institution as was being conducted in the building erected thereupon; that on or about the 9th day of April, 1900, the defendants the College Oil Company and Richard Green, with the consent of, and by reason of and under some agreement, lease, or understanding with, the defendant the Los Angeles University, entered upon the south half of said campus, and that part thereof conveyed to defendants by the complainants and J. S. Maltman, with wagons, lumber, tools, and machinery, built a tool house, erected derricks, set up an engine and boiler and oil tanks, and on the 18th day of April, 1900, began, and at the time of filing the bill were, excavating, drilling, and digging the soil of and into said lands, seeking for petroleum there, to the great and irreparable injury of the land for a university campus or a campus for an educational institution; that the defendants intend to and have contracted and arranged for the drilling and digging of a large number of oil wells, the erection of a pumping plant and many derricks,

oil tanks, pipes, tubing, and other apparatus used in the business of producing and selling crude oil, upon said campus, and will convert said campus into an oil field and a place for conducting an oil business, to the great and irreparable injury and damage of said lands as a campus for a university or an institution of learning and education: that the operations of the defendants interrupt the use and enjoyment of said lands for a campus, and that the complainants have never consented, and do not consent, to such use of said lands by defendants. Upon this bill of complaint, duly verified, the complainants moved for an injunction. An order to show cause was issued, and the defendants appeared and filed affidavits in opposition. It appears from these affidavits that the Los Angeles University was incorporated on the 22d day of June, 1886, for the purpose, as declared in the articles of incorporation, of securing and holding by purchase, gift, devise, bequest, or grant, real and personal property, and of selling, mortgaging, leasing, or otherwise disposing of the same, and of erecting buildings and establishing and maintaining a university for educational purposes. It is admitted that the defendants have commenced the operations described in the bill of complaint, but it is averred, among other things, that in the maintenance of the university a debt of about $16,000 has been incurred and is unpaid; that to secure the payment of such indebtedness the trustees of the university mortgaged all of its property, including the lands described in the bill of complaint; that within two years last past extensive explorations immediately adjacent to and on all sides of said lands has made it plain that the said land is underlaid by a valuable and extensive deposit of oil-bearing sand; that the proposed and begun extraction of oil from said land will not and would not irreparably or at all permanently injure said land for use as a college campus, but that it will enable the defendant the better to carry out the purposes of the donor; that observation of the course of oil operations in the vicinity shows that such operations are not likely to continue on the same ground for a long period; that by the extraction of the oil from the oil sands under the land in questtion it is proposed, and it will be possible, to pay off this indebtedness, and to release all of the property from the mortgage lien, and to procure valuable additional assets for the maintenance of an educational institution upon the premises; that drilling shows that the oil stratum in that region dips slightly to the southward; that experience proves that in oil-bearing strata the crude oil tends to drain towards pumping wells, and especially so if the strata dip in that direction, as in this case, and it is very probable that wells to the southward of the lands in question are continually draining away valuable portions of the oil contained in the strata under the lands described in the bill of complaint; that on the west and northwest, and adjacent to said land, wells have been bored, and are being continuously pumped, and that wells are being bored at a distance of about 80 feet eastward from the east line of said lands. It is alleged, upon information and belief, that complainants have no lands or property lying near to or anywhere so situated with reference to the lands described in the bill that they could in any wise be affected by any particular use of said land. A copy of the deed of conveyance mentioned in the bill of complaint is attached to one of the affidavits. From this deed it appears that the grant was made in consideration of the sum of one dollar, lawful money of the United States of America, paid by the party of the second part to the parties of the first part, the receipt whereof was thereby acknowledged, and that they granted, bargained, sold, and conveyed the real property in controversy to the party of the second part. The habendum clause of the deed is as follows: "To have and to hold, all and singular, the said premises, together with the appurtenances, unto the said party of the second part, and to its legal successors, forever." The deed recites that: "This conveyance is made upon the express conditions and for the consideration hereinafter named, to wit: First. That said land shall be devoted exclusively as a part of the campus of said university, and no buildings shall be erected thereon except those devoted to university purposes. Second. That at least one building, costing not less than ten thousand dollars, shall be erected on said campus and completed on or before September 1st, 1887. Third. That in case of abandonment of said premises for such university at any time before January 1st, 1894, or in case of the nonuser thereof, or in

107 F.—51

case said premises, or any part thereof, is devoted to purposes other than as above specified, then said premises shall immediately revert to the grantors herein, their heirs, executors, administrators, and assigns; the intention being that the reversion herein mentioned shall not occur after January 1st, 1894, under any circumstances." Upon the hearing the court entered an interlocutory order granting the preliminary injunction prayed for in the bill of complaint. From this order the defendants prosecute the present appeal.

Bicknell, Gibson & Trask and T. M. Stewart, for appellants.
John W. Mitchell, for appellees.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

MORROW, Circuit Judge, after the foregoing statement of facts, delivered the opinion of the court.

It is contended by the appellants: First. That by the third conditional clause of the deed of September 16, 1896, the title of the grantees to the land in question became absolute and free from all limitations and restrictions on January 1, 1894, when the period for reversion therein provided had expired. Second. Assuming that the restriction contained in the first conditional clause of the deed continued as a limitation upon the use of the land, it is contended on the part of the appellants that the complainants cannot enforce the restriction in the absence of a showing that they are the owners or have an interest in land for the benefit of which the restriction was intended by the grantors and provided for in the deed.

The deed recites that the conveyance is made upon the "express conditions" and for the considerations thereinafter named. Then follow the three clauses of the deed containing these "express conditions." These clauses provide: (1) That the land conveyed shall be devoted exclusively as a part of the campus of the university, and that no buildings shall be erected thereon except those devoted to university purposes; (2) that at least one building, costing not less than $10,000, shall be erected on said campus on or before September 1, 1887; (3) that the premises described in the deed shall revert to the grantors if abandoned or devoted to purposes other than those specified at any time before January 1, 1894, but under no circumstances is a forfeiture to occur after that date. If these three clauses be construed as conditions, as they are declared to be in the deed, and as their technical terms would seem to indicate, it follows as a legal consequence that the title to the land became absolute in the grantee and free from all limitations and restrictions on January 1, 1894. The consequence of the nonfulfillment of a condition is the forfeiture of the estate. 2 Washb. Real Prop. 3; Woodruff v. Woodruff, 44 N. J. Eq. 349, 353, 16 Atl. 4, 1 L. R. A. 380; Adams v. Valentine (C. C.) 33 Fed. 1; Woodruff v. Power Co., 10 N. J. Eq. 489, 508; Mission v. Appleton, 117 Mass. 326, 329; Langley v. Chapin, 134 Mass. 82. When, therefore, by the terms of the conveyance, the period of forfeiture has passed, the condition has been discharged, and the estate is no longer subject to its limitation or restriction. 1 Washb. Real Prop. (5th Ed.) 96. But may it not have been the intention of the grantors in this convey-

ance to create a condition in the third clause, where a forfeiture is specifically declared, and a covenant running with the land in the first clause? Conditions are not favored in law, and are construed strictly, because they tend to destroy estates. 4 Kent, Comm. 130; Crane v. Inhabitants of Hyde Park, 135 Mass. 147; McKelway v. Seymour, 29 N. J. Law, 321, 327; Watterson v. Ury, 5 Ohio Cir. Ct. R. 347; In re Wellington, 16 Pick. 87, 99. And if it be doubtful whether a clause in a deed be a covenant or a condition, the court will incline against the latter construction. 4 Kent, Comm. 132; Greene v. O'Connor (R. I.) 25 Atl. 692; Adams v. Valentine, supra. In Post v. Weil, 115 N. Y. 361, 366, 22 N. E. 145, 5 L. R. A. 422, the court of appeals of New York, in considering whether a clause of a deed should be construed as a condition or a covenant, said:

"Mere words should not be, and have not usually been, deemed sufficient to constitute a condition, and to entail the consequences of forfeiture of an estate, unless from the proof such appears to have been the distinct intention of the grantor and a necessary understanding of the parties to the instrument. Nor should the formal arrangement of the words influence us wholly in determining what the clause was inserted to accomplish; but in this, as in every other case, our judgment should be guided by what was the probable intention, viewing the matter in the light of reason."

Applying this rule to the first clause of the deed under consideration, we find sufficient reason in the evident purpose of the conveyance and in the situation of the parties, as disclosed by the surrounding circumstances, to construe this clause separately, not as a condition, but as a covenant. What, then, is the remedy for the nonfulfillment of a covenant? The delinquent party must respond in damages; but a court of equity can in a proper case enforce the specific performance of a covenant of this character. 3 Pom. Eq. Jur. § 1342; Woodruff v. Woodruff, supra.

This brings us to the consideration of the question whether, in proceedings by injunction to enforce the specific performance of a covenant, it is necessary for the complainant to show that he is beneficially interested in the performance of the covenant. The general rule is that the complainant is not entitled to an injunction in any case unless it is shown that he has some vested right or interest that will suffer irreparable injury from the act which he seeks to restrain. Branch Turnpike Co. v. Board of Sup'rs of Yuba Co., 13 Cal. 190; Bank of California v. Fresno Canal & Irrigation Co., 53 Cal. 201, 203; City of New York v. Mapes, 6 Johns. Ch. 46; High, Inj. (3d Ed.) § 9. But there is a distinction to be observed, in enforcing covenants, between a case where the complainant seeks to prevent or abate a nuisance, and a case where the complainant has an interest or title to real estate, in favor of which there is a covenant securing a privilege or right binding in equity. In the latter case it is said that the covenantee has the right to have the actual enjoyment of his property modo et forma, in accordance with the stipulation in that behalf, and that it is no answer to say that the act complained of will inflict no injury upon him. 2 High, Inj. § 1153; 1 Beach, Inj. § 480; Kirkpatrick v. Peshine,

24 N. J. Eq. 216. But in such case it is clear that the complainant must show that he has some interest or title in the land to be protected. This right or interest is the very foundation of his action. He must show that he is the owner of or has an interest in the premises in favor of which the benefit or privilege has been created; otherwise, he has no interest in the covenant and is a mere intruder. In Parker v. Nightingale, 6 Allen, 341, 83 Am. Dec. 632, the suit was brought by the plaintiff in behalf of himself and 11 others, each the owner of a dwelling house and lot on a certain street in Boston, to restrain the defendant Nightingale, another house and lot owner on the same street, from converting his dwelling house into a restaurant. The bill set forth that, before the erection of the said dwelling houses, the land upon and adjoining the street designated belonged to one Hayward; that upon his decease his heirs agreed among themselves that the land should be divided into house lots, and, when conveyed, the grantees should take subject to the condition that no buildings should be erected thereon except for dwelling houses. A lot was conveyed to the defendant upon such condition. Defendant leased the premises to another, who had taken steps to convert the dwelling house into a restaurant. Plaintiffs sought an injunction against such use of the premises. The court, through Bigelow, C. J., said:

"A court of chancery will recognize and enforce agreements concerning the occupation and mode of use of real estate, although they are not expressed with technical accuracy, as exceptions or reservations out of a grant not binding as covenants real running with the land. Nor is it at all material that such stipulations should be binding at law, or that any privity of estate should subsist between parties, in order to render them obligatory, and to warrant equitable relief in case of their infraction. A covenant, though in gross at law, may nevertheless be binding in equity, even to the extent of fastening a servitude or easement on real property, or of securing to the owner of one parcel of land a privilege, or, as it is sometimes called, 'a right to an amenity,' in the use of an adjoining parcel, by which his own estate may be enhanced in value or rendered more agreeable as a place of residence."

After a further statement of the principles involved, it was held that the plaintiffs were entitled to equitable relief in the enforcement of the restriction contained in the conveyance to the defendant, as owners of the estates for whose benefit the restriction was originally designed; that the purpose of the restriction was to secure to each estate the benefit or advantage which would arise from the specific mode in which the adjoining premises were to be improved and occupied, giving a right or privilege of amenity in each lot within the restriction to the owners of all the other lots within the designated limits. The question arose in this case whether the original grantors were not necessary parties to the proceedings. Upon this question the court said:

"In strictness, perhaps, the right or interest created by the restrictions, being a qualification of the fee, did not pass out of the original grantors, and now remains vested in them or their heirs. But, if so, they hold it only as a dry trust, in which they have no beneficial use or enjoyment, the entire usufruct being in their grantees and their assigns now holding the estates, for whose use and benefit it was intended. Such being the case, then the latter are proper parties to enforce the restriction, and the former, not having any present interest in it, need not be parties to the proceeding."

This is the precise question in the present case, and determines that the complainant, having no present interest in the enforcement of the covenant under consideration, has no right of action against the defendants.

In Sanborn v. Rice, 129 Mass. 387, 396, there was a bill to enforce certain restrictions contained in conveyances by a common grantor. Concerning such a restriction the court said:

"It often happens that owners of land, which they design to put into market in lots for dwelling houses, insert in the deeds of the several lots a uniform set of restrictions as to the purposes for which the land may be used, and as to the portions of it which may be covered by buildings. So far as these restrictions are reasonable in their character, they are upheld and enforced by courts of equity in favor of the original owner, so long as he continues to own any part of the tract for the benefit of which the restrictions were created, as well as in favor of the owner of any one of the lots into which the tract was divided, and against the owner of any of the lots who attempts to set the restrictions at naught."

In Clark v. Martin, 49 Pa. 289, each grantee of adjoining lots had covenanted not to build on the rear portion of his premises above a certain height. The complainant had become the purchaser of a lot adjoining that which the defendant had bought, subject to the condition, and it was held that he was entitled to an injunction against a violation of the covenant on the ground that the condition was imposed for the benefit of such adjoining lot. The court declared it to be plain "that the duty created by the condition and restriction is a duty to the owner of the adjoining lot, whoever he might be." In Watrous v. Allen, 57 Mich. 362, 24 N. W. 104, the grantor conveyed premises with the condition that, if spirituous or intoxicating liquors should be sold or kept for sale on the granted premises, the title to the premises should revert to and vest in the grantor, his heirs and assigns. The condition was treated as a covenant, and enforced by injunction in favor of the assignee of the grantor, on the ground that the restriction was inserted in the deed for the benefit of the grantor as the owner of the land and of lots in the vicinity contiguous to the granted premises, and that whatever rights, interests, and benefits the grantor had by virtue of the restriction belonged to the complainant. In Whitney v. Railway Co., 11 Gray, 359, 71 Am. Dec. 715, it was held that plaintiff's right to equitable relief in the enforcement of a restriction as to the use of certain premises was because she was the owner and occupier of a part of the estate for the benefit and advantage of which the restriction was imposed, and therefore had a present right and interest in its enforcement. In Graves v. Deterling, 120 N. Y. 447, 24 N. E. 655, the plaintiffs sought to recover possession of certain property upon the ground that the abandonment of its use as a park worked a forfeiture, and that they, as heirs of the grantor, were entitled to the reversionary title. The court construed the restriction in the deed of conveyance as securing a benefit of the grantors and their heirs by way of forfeiture or reversion, and that, as the whole title to the park and the contiguous lots passed from plaintiffs' ancestor in his lifetime, they inherited no right to either, and, having title to neither the park nor to any land for the benefit

of which the park was created, they had no foundation upon which to base an action.

In these and other cases that might be cited, where the complainant has maintained his right to the remedy by injunction, he has shown that he had some interest or estate to protect for the benefit of which the covenant had been created. In the last case cited, the complainants failing to show such an interest, the complaint was dismissed upon the ground that the complainants had no right or interest upon which an action could be founded. And in reason and principle this must be the rule upon the subject. In general terms, the benefit of a condition in a grant is reserved to the grantor and his heirs without regard to the ownership of other property; but, where the grant contains a restriction in the nature of a covenant that has relation to a benefit to adjoining property, the restriction can only be enforced in favor of the title to such adjoining property. In the case at bar it is alleged in the bill that complainants and others were the owners of large tracts of land adjoining the city of Los Angeles, including the land in question; that representatives of the proposed university urged upon the complainants the donation of a tract of land for part of the campus of the university, setting forth the many benefits that would accrue to the owners of land in the vicinity of such an institution, in drives, walks, trees, shrubs, and flowers, college buildings, residences for professors, and in the many sales of lots of land that would be made to those preferring homes amid refinement and culture, where their children could have the advantages of a Christian education; and in furtherance of such plans, and to assist in the establishment of said university, many subscriptions of money and land were thus solicited and received from the owners of land in the vicinity of said campus, and to this purpose complainants and others, relying upon these representations, agreed to subscribe and did subscribe, as a gift, the land in question, to be used exclusively as a campus for said proposed university. But the complainants do not show in their bill, and it is not shown by affidavit or otherwise, that they are now the owners of or have any interest in any lands in the vicinity of the university buildings or the campus connected therewith, but, on the contrary, it is averred upon information and belief, in one of the affidavits, that the complainants have no such interest. The inference is, therefore, that the complainants are not in any way interested in the benefit arising from the restriction or limitation placed upon the granted estate by the terms of the covenant contained in the deed, and that the complainants will not be damaged by the failure of the defendants to comply with the terms of the covenant. They are therefore not in a position to maintain this action. We are of the further opinion that it does not appear that the proposed explorations for oil on the land in question will be a substantial violation of the restriction contained in the covenant under consideration. The educational institution now upon the premises is to be continued, and the proposed operations upon the tract of land now in use as a campus will probably be of a temporary character. The general purpose of the original grant will not be defeated, but may

be materially advanced in the pecuniary results to be derived from the development of the wealth supposed to be under the surface of the land. The interlocutory decree will therefore be reversed, and the bill dismissed.