## DARWIN C. GOODALE, PETITIONER.

Middlesex, February, 1905.

*Condition — Terminated by Power of Attorney to Enforce, Coupled with Covenant to Stand Seized — Recital by Subsequent Grantors not Equivalent to Reimposition.*

In 1805 Royal Makepeace conveyed a tract of land, including locus, to one Whitman, " provided, however, and this deed is on this express condition, that no building less than three stories high or of other materials than brick or stone shall ever be erected on the front part of the lot adjoining Concord Street, anything herein to the contrary notwithstanding."

In 1846 the premises were conveyed by one Russell, successor in title to Whitman, by a deed in which the Makepeace condition was repeated verbatim.

In 1846 Makepeace gave to one Bent a power of attorney under seal to release and discharge upon such terms and for such consideration as his attorney might judge expedient, any or all conditions, provisos, restrictions and encumbrances to which any of Makepeace's land in Cambridge might be subjected by the terms of any deeds by him given, and to release and discharge any part of said lands from such conditions by deed or otherwise, and also to enter upon and take possession for breach of condition any property theretofore conveyed by Makepeace upon condition, and thereby revest the title in said Makepeace for such breach of condition, and in consideration of one dollar paid by said Bent, said Makepeace, for himself, his heirs and assigns, covenanted with said Bent, his heirs, executors, administrators and assigns,

to stand seized of all lands the title whereof should be re-vested in Makepeace by means of any such entry, to the use of said Bent, his heirs, executors, administrators and assigns.    Makepeace died June 6, 1855.    In May, 1856, said Bent, purporting to act as attorney of said Makepeace by virtue of the instrument above recited, granted, sold and conveyed to the then owner of locus all the conditions con-tained in said deed from Makepeace to Whitman, habendum in fee.

It is unnecessary to determine whether the condition in the Makepeace deed is to be construed as a condition at common law, or a restriction.    It is clearly a condition, un-less the fact that it prohibits the use of the land in more than one particular way necessitates its construction as a restric-tion under the doctrine suggested in Appleton v. Episcopal City Mission, 117 Mass. 326, and similar cases.    If it be a restriction it may be disregarded in this case, for the reason that the character of the property and of the neigh-borhood has so totally changed that the purpose for which it was imposed no longer exists.    If it be a common law condition it was released by force of the instrument from Makepeace to Bent.    It is true that during the lifetime of Makepeace the condition was not released by Bent, and on Makepeace's death, any existing right of reverter would have passed to his heirs.    But I think that the attempted power of attorney coupled with the covenant to stand seized, must in itself be considered a determination of the right of re-verter in Makepeace.    No particularly technical form of grant was necessary for this purpose.    The principle of law by which a right of reverter is held to be terminated by an attempted grant is purely a principle of public policy; a policy which is controverted fully as much by the attempted power and covenant to Bent as it could possibly have been by a full grant.    The policy of the law does not permit the buying or selling of inchoate rights.    The policy is a policy

against maintenance and champerty, and for "suppressing of rights and stirring up of suits, which would happen if men were permitted to grant before they be in possession." It was a policy by which any attempt to convey to a third party a right or possibility or re-entry for forfeiture of an estate, which ought to be strictly limited to the grantor and his heirs, (and, in Massachusetts, residuary devisee,) was made unlawful and void. The attempted transaction between Makepeace and Bent was one by which Makepeace parted with his entire real interest in the estates, giving Bent as full power either to release the conditions, or enter for their forfeiture as though he himself had originally imposed them, giving to Bent all pecuniary results, and covenanting to stand seized for his benefit of the legal estate also. This comes as fully within the doctrine of the Massachusetts cases, as though it had been a deed in ordinary form. Guild v. Richards, 16 Gray, 309, 317; Rice v. B. & W. R. R. Co., 12 Allen, 141.

The clause in the later deed from Russell to Dudley appears to be a mere recital of the condition, and not a reimposition of it. The scrivener seems simply to have copied his grantor's deed. The peculiar language is quoted verbatim, and there is nothing to indicate that it was intended to be a separate condition with a separate right of forfeiture in Russell. There seem to be no decisions squarely in point, but the principle is well recognized that in such a case the phraseology of the later deed may be construed merely as a statement of the condition already existing. Cassidy v. Mason, 171 Mass. 507; Clapp v. Wilder, 176 Mass. 332, 336. It might further be questioned whether on the principle suggested in Appleton v. Episcopal City Mission it can fairly be said to have been the intention of the second grantor to reserve to himself an inchoate estate liable to be extinguished by the very act necessary to give it birth.

Decree for petitioner.