[Filed February 15, 1888.]

## GEORGE A. COFFIN ET. AL., APPELLANTS, *v.* CITY OF PORTLAND ET. AL., RESPONDENTS.

CONVEYANCE—TRUST—RESULTING.—In 1865, one Coffin executed a deed of "the levee" to the City of Portland without consideration, and in trust for a public "levee" or "landing." In 1871, he executed a second deed in consideration of two thousand five hundred dollars, reciting the former one, and also releasing a ferry privilege which Coffin held on the premises. *Held*, (1) That the latter deed conveyed from Coffin to the city the reserved rights of Coffin, and operated as a confirmation of the prior conveyance, and no resulting use or trust could arise in favor of Coffin's heirs, whatever disposition the city made of the premises. (2) A condition subsequent in a deed that will under any circumstances defeat the title conveyed must provide that the conveyance is upon condition, and that the failure to perform it will operate as a forfeiture of the estate. (3) Equity will not decree a forfeiture. The remedy is by re-entry for condition broken.

APPEAL from Multnomah County.

*J. G. Chapman,* and *W. R. Bilyeu,* for Appellants.

*W. H. Adams,* City Attorney, for Respondent, the City of Portland.

*McDougall & Bower,* for the Portland and Willamette Valley Railway Company.

THAYER, J.—This appeal comes here from the Circuit Court for the county of Multnomah. It is from a decree of that court sustaining a demurrer to the appellants' complaint. It is alleged in the complaint that appellants are the heirs at law of Stephen Coffin, deceased; that said Coffin, David H. Lownsdale, and W. W. Chapman were the town proprietors of the town of Portland, and that in 1850, in laying off said town, they attempted to dedicate certain premises as a public "levee"; that they made and published a map of the town, on which they designated them as a "public levee"; that in a subsequent division of the town site among the said proprietors, the part thereof allotted to Coffin ·included the said "levee"; that in 1865, Coffin executed a deed of the "levee" to the city of Portland, but without consideration, and in trust for a "public levee," or landing; that in 1871, said Coffin executed a second

deed of the levee to the city of Portland, in consideration of two thousand five hundred dollars; that the latter deed recited the former one; also, that Coffin owned the right of a public ferry on the premises, and that it was desirable that the city should hold the "levee" free from such claim; that the premises constituting the "levee," at the time said last deed was executed, were worth fifty thousand dollars, and at the time the complaint was filed, were worth seventy thousand dollars; that neither the city of Portland, the State of Oregon, nor the public had ever made any use of the premises, and each had abandoned them; that the use for which the dedication and donation were attempted to be made had failed, and that no public levee or landing could be maintained of any utility; that the attempted dedication and donation were upon condition that the premises should be used as a public landing or levee, and that they had not been so used, and that it was not intended to so use them; that in 1885, the legislature of Oregon passed an act attempting to grant the premises to the Portland and Willamette Valley Railway Company, a private corporation, for its depot, wharf, and warehouse; and that said company claims the premises under such act. Wherefore the appellants claimed that a reversion and resulting trust of the premises should be declared in their favor. It is shown in the complaint that the city of Portland has exercised acts of ownership over the "levee"; that in 1884, it caused piling to be driven along the front thereof upon the margin of the Willamette River, at the cost of four thousand dollars, and it is not pretended that the city has ever indicated any formal intention of abandoning it, or done any act from which such intention could be implied.

The inference to be drawn from the complaint in reference thereto seems to be that it cannot practically carry out the purposes of the dedication, as the appellants *term* it, nor employ it for the purposes designed, or needs it. Under one aspect of the complaint, the property was given for a particular use, and it having failed, a resulting use or trust arises in favor of the donor's heirs, which entitle them to reclaim it. Under another aspect of it, the property was given upon condition that it should

be used for a particular purpose, and it not having been so used, was a violation of the condition, and operated as a forfeiture of the estate given, and entitled the heirs to a return of it to them.

The title of the city of Portland to the premises in question is derived by the purchase of them from Stephen Coffin, and if the heirs of the latter have the right to reclaim the title granted, it arises out of the terms upon which the purchase was made. The premises were conveyed by Coffin to the city by the deeds of 1865 and 1871, and if it can be ascertained therefrom that Coffin only intended to convey to the city a partial use of the premises, reserving the residue to himself, and the complaint shows that the use so conveyed is terminated, the estate reverts to his heirs.   If, on the contrary, the deeds show that Coffin intended to convey to the city his entire interest in the premises, although he limited their use to some particular purpose, and the city has divested the use to an entirely different purpose, still, neither he nor his heirs would have any right to claim a reversion of them.   They would doubtless have the right to go into a court of equity and ask that the city be compelled to devote the premises to the use intended.   They would not be entitled to a return of them, for the reason that the grantor had disposed of his entire interest in them, and the property would no more revert to him or his heirs in any event than to a stranger.   A grantor virtually becomes a stranger to the property when he alienates it absolutely.

The effect of a deed to property depends upon the intent of the parties to it, and we must gather the intent of the parties in the transaction mentioned from the deeds referred to.   The former rule was, even after the adoption of the Statute of Uses, that when one person transferred the legal seisin or possession of land to another by any of the common-law modes of assurance, without any consideration, equity presumed that he meant it to the use of himself, unless he expressly declared it to be for the use of another.   (*Van Der Volgen* v. *Yates*, 9 N. Y. 219.) Under that rule it became important when the conveyance was made, without consideration to declare for whose use it was made. But the rule did not obtain where the conveyance was executed

for a valuable consideration. The grantor could not have the purchase money and the land also. Thus, it is said in Perry on Trusts, section 151 : "If a conveyance has been made upon a valuable consideration, there can be no resulting trust to the grantor, as the payment of a valuable consideration imports an intention to benefit the grantee in case the trusts declared fail, or are imperfectly declared, or do not take effect for any other reason."

It is doubtful whether the rule would prevail under our statute, which provides that "any conveyance of any real estate hereafter executed shall pass all the estate of the grantor, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant." I hardly think it would, although the conveyance was made without any valuable consideration, and it certainly would not *if made* upon a valuable consideration. The two deeds from Coffin to the city cannot, taken together, be regarded as without consideration. The appellants' counsel claimed that the second one was evidently given to extinguish Coffin's ferry right in the "levee," but its recital of the former conveyance of Coffin's ownership of the ferry right on the "levee," and that it was desirable that the city should hold the property free of such claim, shows, unmistakably, that it was intended that the city should acquire an absolute title to the property, and was evidence that Coffin intended to convey every right thereto which he had not already conveyed by the former deed. I think beyond question that the latter deed was not only intended to convey from Coffin to the city the reserved rights of Coffin in the "levee," but also to operate as a confirmation of the prior conveyance. Under this view of the case, no resulting use or trust arises in favor of Coffin's heirs, whatever disposition or use may have been made of the premises. The other view suggested in the complaint that the deeds were made upon condition cannot be maintained so as to benefit the appellants.

A condition subsequent in a deed, that will, under any circumstances, defeat the title conveyed, must provide that the conveyance is upon the condition, and that the failure to perform it

shall operate as a forfeiture of the estate granted. When such a condition is broken by the grantee, the grantor is entitled to re-enter, but a court of equity will not entertain jurisdiction to declare the forfeiture. The grantor must go into a court of law if he desires to enforce the condition. Equity will not decree a forfeiture. These deeds contained no condition subsequent. The limitation of an estate to a particular use in such a conveyance does not constitute, without words of forfeiture, such a condition. (*Rawson* v. *The Inhabitants of School District No. 5 in Uxbridge*, 7 Allen, 128.) "Although a deed contain a clause declaring the purpose for which it is intended, the granted premises shall be used, if such purpose will not inure specially to the benefit of the grantor, but is in its nature general and public; and if there are no other words in the grant indicating an intent that the grant is to be void if the declared purpose is not fulfilled, such a clause is not a condition subsequent." (Lion, J., in *Horner* v. *The Chicago, Milwaukee & St. Paul Railway Company*, 38 Wis. 175.) To the same effect is the decision of this court in *Raley* v. *Umatilla Co.* 15 Or. 172, and it is supported by a large number of authorities there cited. Upon neither of the views considered have the appellants any standing in court. Their ancestor not only dedicated the premises to the public for a "public levee," but absolutely for a valuable consideration conveyed to the city of Portland his entire right, title, and interest in them, and by no course of reasoning can they maintain the claim they have set up, even though the city, State, and public have abandoned them, as alleged in the complaint. Parties cannot recover back property after having parted with their title to it. They have thereafter no more claim upon the property than upon property which they never owned.

In all the cases where property has been recovered back after having been conveyed by the vendor, when no fraud has been practiced upon him, it has been by virtue of a reservation, either expressed or implied, whereby a less interest than the absolute title has been conveyed, or where the estate conveyed has been fettered by some condition. A considerable discussion in this case has been had in regard to the manner in which the city of

XVI. OR. — 6.

Portland and the public have used and treated the premises in controversy, and as to the effect of the Act of the legislative assembly of the State of 1885, mentioned in the complaint; but neither of these matters need be considered. They do not, under any view, give the appellants any ground upon which to base a claim to title, nor affect their rights any more than they do those of other citizens of the State. That the said Act of 1885 is not, when properly construed, inconsistent with the purposes of the dedication of said premises, was held by the Circuit Court of the United States for the district of Oregon, in a suit between these same parties and for the same cause. (27 Fed. Rep. 412.) Judge Deady in that case, after a very thorough consideration of the allegations in the bill of the complainants, determined, that by giving the said act effect within such powers as the legislature was entitled to exercise over the subject, and construing it accordingly as the court was bound to do, if it could, it was a grant to the railway company of the right to improve and use the premises as a public landing, with the added facility of direct and immediate railway connections therewith. This court, in *Portland W. V. Railway Co.* v. *City of Portland*, 14 Or. 188; 58 Am. Rep. 299, fully indorsed and adopted that view.

There is no principle better settled than that the legislature has authority to regulate the public use to which property has been devoted; and so long as it keeps within its power, the courts have no concern with its acts except to administer their provisions. And when an act is susceptible of two constructions, one of which would render it authoritative and the other a nullity, courts are bound, as Judge Deady says, to give it the former construction. The legislature is not to be presumed as having intended to go beyond its powers in the adoption of an act, and the courts will give it effect in accordance with the presumed intention of that body in adopting it, when it can be done by reasonable construction.

It follows from the reasons above given that the decree appealed from must be affirmed.