Argued June 27, affirmed September 25, 1923.

# WARD *v.* KLAMATH COUNTY ET AL.

### (218 Pac. 927.)

**Deeds—Deed on Condition, but Without Reverter Clause, Gives Indefeasible Title to Grantee.**

1. A deed made upon the express condition that the grantee shall erect a courthouse upon the premises, but containing no reverter clause, gives an indefeasible title, although the grantee might be liable for damages if the condition is broken.

**Deeds—Deed on Condition With Reverter Clause Gives Land to Grantor upon Breach of Condition.**

2. A deed providing that a failure on the part of the grantee within five years to build a courthouse upon the premises shall render the conveyance null and void and cause the land to revert to the grantor gives a defeasible title which reverts to the grantor if the condition is not fulfilled at the end of five years.

**Escrows—Delivery of Deed in Escrow not Transfer of Title, Only Offer to Convey.**

3. A deed delivered in escrow upon conditions which were never complied with, and which was never delivered to the grantee, is not a transfer of title, but at most an offer to convey.

**Evidence—Recital in Instrument Conclusive Between Parties.**

4. An agreement stating that one is the owner of a lot is conclusive as between the parties within Section 798, Or. L., making "the truth of the facts recited from the recital in a written instrument, between the parties thereto," a conclusive presumption.

**Counties—Order of County Court in Proceeding in Which There are No Parties not Conclusive Though No Appeal is Taken.**

5. An order of the County Court, designating the partially completed courthouse on a certain lot as the permanent courthouse for that county, which order was not entered in a proceeding to which there were parties, was not, although not appealed from, conclusive upon an objecting taxpayer.

---

1. Reverter of land dedicated or conveyed for purpose of courthouse on removal of county seat or failure to use land for such purpose, see notes in 1 Ann. Cas. 455; 35 L. R. A. (N. S.) 603.

3. Delivery of deed in escrow as change of title or interest, see note in 39 L. R. A. (N. S.) 142.

Rights of a citizen or a taxpayer to enjoin waste of state funds, see note in L. R. A. 1915D, 178.

Counties—Recall of Judge Does not Invalidate Contract Which He
   Made as a County Officer as One of the Members of the County
   Court.

6. Where a judge participated in making a contract for the
erection of a courthouse, the recall of the judge does not in-
validate the contract.

Injunction—County Officers may be Restrained from Wasting Pub-
   lic Money.

7. While courts will not interfere with the decisions of the
County Court unless its discretion in the transaction of county
business is abused, yet, at the instance of a taxpayer, they may
be restrained from wasting public funds.

Action—Suit to Enjoin Expenditure of County Money a Contro-
   versy, not a Moot Case.

8. A suit by a taxpayer to enjoin the expenditure of money
for the erection of a courthouse on grounds to which the county
had no title, when it has a commodious courthouse and grounds,
does not present a moot question, but an actual controversy, which
a court will decide.

Injunction—Defenses to Suit to Enjoin Erection of New Court-
   house Held of No Merit.

9. In a suit by a taxpayer to enjoin the expenditure of money
for the erection of a courthouse upon lands to which it once had a
defeasible title, the defense that the inability of the county to
comply with the conditions of the deed was caused by injunctions
*held* not available where it appears that the injunctions were
rightful, nor was it material that the existing courthouse was not
complete in all respects.

From Klamath: G. F. SKIPWORTH, Judge.

In Banc.

AFFIRMED.

For appellants there was a brief and oral argu-
ments by *Mr. E. L. Elliott* and *Mr. Isham N. Smith.*

For respondent there was a brief and oral argument
by *Mr. Harrison Allen.*

BURNETT, J.—In Klamath Falls, formerly Link-
ville, the county seat of Klamath County, there are
two tracts of land. One, upon which the original
courthouse was erected and now stands, is block 35 on

the original town plat of Linkville. The other is block 10 on the plat of Hot Springs Addition to Klamath Falls. The name of the original town was changed to Klamath Falls, which will explain the allusion to Linkville.

For the east half of block 35, Klamath County claims title by a deed from Quincy A. Brooks and wife of date, September 12, 1887, containing the following proviso:

"That this deed is made to said county upon this express condition, that said county shall, within five years from this date, erect on said premises a substantial courthouse and thereafter keep and maintain said courthouse on said premises."

For the west half of that block the county holds a deed from Brooks and wife dated September 10, 1888, with full covenants of warranty and seizen.

On June 30, 1911, the Klamath Development Company, as party of the first part, being the owner of block 10 in Hot Springs Addition, executed and delivered to the defendant, Klamath County, party of the second part, a deed to that property, containing this condition:

"This deed is given to and accepted by the party of the second part on the following conditions which are to be binding upon the party of the second part and its successors forever, to-wit: The party of the second part shall pay all taxes heretofore levied or assessed against said property and which are now unpaid. The party of the second part shall, as soon as may be practicable, but in any event before the expiration of five (5) years from the date hereof, construct and complete upon said land a courthouse, jail and other necessary structures suitable for the transaction of the judicial and fiscal business of said Klamath County for said Klamath County, at a cost of not less than Two Hundred Thousand dollars and shall there-

after perpetually maintain such courthouse on said land and the said courthouse and other structures shall be used for the carrying on by said Klamath County such judicial and fiscal business as the party of the second part shall see fit to conduct therein. The failure on the part of the party of the second part to comply with foregoing conditions shall render this conveyance null and void and said land shall forthwith revert to the party of the first part.''

On May 13, 1913, Klamath Development Company, as party of the first part, executed a quitclaim deed conveying to Klamath County said block 10 and at the same time addressed a letter to the First Trust and Savings Bank of Klamath Falls, Oregon, as follows:

''Gentlemen:

''We hand you herewith a deed executed by The Klamath Development Co. on the 13th day of May, 1913, conveying to Klamath County the title to Block Ten in Hot Springs Addition to the City of Klamath Falls.

''This is the land on which Klamath County is now erecting a Court House. It is our purpose that this deed shall become effective when the following three conditions have been fully complied with:

''1. When the Court House now under construction has been completed and accepted by Klamath County.

''2. When the Court House grounds, including all of Block Ten have been improved by the grading of the grounds, and the construction of sidewalks, street parking, and curbs.

''3. When the seat of government of Klamath County is moved to and permanently located in the New Court House on said Block Ten.

''You are hereby directed to keep this deed in your custody until such time as the above conditions have been fully complied with. At that time you will deliver it to the County Commissioners of Klamath County through the County Judge.''

108 Or.—37

This letter was signed by the Klamath Development Co., by its president.

During the period of time beginning, prior to and continuing after the execution of the last-mentioned deed, Klamath County, operating for itself without letting any contracts for the same, had expended approximately $150,000 towards building a courthouse on block 10, but same was very far short of completion, the county suspended operations thereon, and for several years the work had entirely ceased.

In the early part of the year 1918, the County Court of Klamath County had under consideration the matter of erection of a courthouse and took counsel of some architects about the probable cost of completing the building on block 10 according to the original design and according to a modified scheme and likewise, the cost of building an entirely new and suitable courthouse on block 35. Having considered the estimates, the County Court determined to build a new courthouse entire, on block 35, and let a contract for the same to the J. M. Dougan Co. On April 12, 1918, the then county judge of Klamath County and one county commissioner made and signed an instrument by which the County Court, having decided to construct a courthouse on block 35, and that block 10 would not be used for the purposes mentioned in the deed last hereinbefore mentioned, directed the holder of the deed, the First Trust and Savings Bank, to deliver the instrument to the original holder, Klamath Development Co. There is testimony in the record to the effect that the deed had never been actually placed in the custody of the bank as recited in the letter to that institution, but appended to the instrument signed by the county judge and commissioner is a writing to this effect:

"On demand of Klamath Development Co., I have this day received before mentioned deed dated April 12, 1918, signed C. F. Stone, Attorney for said company."

The record is clear, however, that the deed was never delivered to the county and that none of the conditions of the letter to the bank was fulfilled. On this same twelfth day of April, the then county judge and said county commissioner ordered that a quitclaim deed be executed to the Klamath Development Co. by the county to lot 10 of Hot Springs Addition, and accordingly the judge and commissioner made, executed and delivered to the Klamath Development Co. such a quitclaim deed of date, April 12, 1918.

It is disclosed by the testimony that that county judge was recalled and the present county judge, R. H. Bunnell, defendant herein, was elected in his stead. Thereafter, on May 1, 1918, the following agreement was executed between the Klamath Development Co., party of the first part, and the county of Klamath, State of Oregon, party of the second part:

"THIS AGREEMENT, made and entered into this First day of May, 1918, by and between THE KLAMATH DEVELOPMENT Co., a corporation organized and existing under the laws of the State of California, the party of the first part, and COUNTY OF KLAMATH, State of Oregon, the party of the second part,

"WITNESSETH:

"WHEREAS, the party of the first part is the owner of that certain lot, piece or parcel of land situate, lying and being in the City of Klamath Falls, in the County of Klamath, State of Oregon, known as and called Block Ten (10) in Hot Springs Addition to said City of Klamath Falls, as so designated, delineated and described in and according to the duly recorded plat of said Addition filed in the office of the County Clerk of said County,

"EXCEPTING, that portion of Block Ten (10) which was heretofore deeded to Klamath County, on May 13th, 1913, for the erection of a Carnegie Library, said deed being recorded on Page 48, Book 41, of Deeds of Klamath County.

"Now, THEREFORE, in consideration of the covenants and agreements of the party of the second part, the party of the first part agrees that if the party of the second part will complete and maintain, upon said Block Ten (10) of Hot Springs Addition, a suitable court house in which the judicial business of Klamath County shall be carried on, the party of the first part will grant, transfer and convey unto said party of the second part said lot, piece or parcel of land as above described by a good and sufficient deed, said deed to be delivered upon the completion and occupancy of said court house, provided, however, that the said court house will be completed and occupied within two (2) years from the date of this agreement.

"IN WITNESS WHEREOF, the party of the first part has, on the day and year first above written, hereunto caused its corporate name to be signed and its corporate seal to be affixed by its Vice President, and the County Court of Klamath County, Oregon, party of the second part, has hereunto set its hand and seal on the day and year first above written.

"THE KLAMATH DEVELOPMENT Co.
"By W. B. PARKER,
"Vice President.
"COUNTY COURT OF KLAMATH COUNTY.
"By R. H. BUNNELL, Judge.
"By BURRELL SHORT, Commissioner."

The County Court having contracted with the J. M. Dougan Co. to build a courthouse on block 35, as above stated, that firm actually erected the courthouse according to contract and obtained a final decree of this court for the payment of the contract price, all as determined in *Dougan Co. v. Klamath County,* 99 Or. 436 (193 Pac. 645). At this stage of the history of the transactions relating to courthouse building in

Klamath County, the plaintiff, Ward, a taxpayer of Klamath County, brings this suit to enjoin the further expenditure of money on the building on block 10 or from levying any tax designed to continue the project of building a courthouse on those premises. The assessor, sheriff and clerk of said county are made parties defendant to prevent them from extending on the tax-roll any tax for the purpose of raising funds for the Hot Springs project or from collecting any such tax. After sundry denials of the complaint, the answer of the defendants, county judge and commissioners, practically avows their purpose to levy taxes and collect the same and proceed to the erection and completion of the courthouse on block 10 and prays that the complaint be dismissed. A supplemental complaint recites proceedings since the institution of the suit, whereby the County Court paid part of the decree in favor of the J. M. Dougan Co. heretofore mentioned; that the county judge and commissioners refused to appropriate money for the payment of the balance of the judgment; that the Circuit Court and its officials of Klamath County had occupied part of the new courthouse on block 35, and that the County Court refuses to occupy same or to allow the other officers of the county to do so and refuses to install in the new building certain vault doors and jail cells and the like owned by the county and designed to be used therein. The answer to this, after certain unimportant denials, pleads a great deal of evidence intended to show that there was a defect in the roof of the new courthouse, that the same had been repaired under the orders and direction of the circuit judge and certain expenses had been incurred by the same authority in fitting up the offices actually occupied in the new courthouse. It is also recited that the present County Court, on July 11, 1921,

declared it to be the policy of the County Court of Klamath County that it proceed to utilize all materials on hand and funds available, together with such funds as may be derived from the sale of such portion of block 35, and complete and furnish the courthouse on block 10, declaring the courthouse on block 10 as the permanent county courthouse for Klamath County, Oregon. This recital of testimony denominated an answer to the supplementary complaint was challenged in some respects in the reply.

In substance, this is a suit by a taxpayer to prevent the further levy and expenditure of county funds on the Hot Springs project for a courthouse on block 10. It is one of the many successive features of the expensive litigation which has been going on in Klamath County for several years past, relating to the erection of the courthouse. The defendants contend in substance that the scheme for a courthouse on block 10 was sanctioned by the decision of this court in *Murdock* v. *Klamath County*, 62 Or. 483 (126 Pac. 6). The plaintiff in that case urged that the county had no right to erect a courthouse elsewhere than at the county seat which, under the Laws of 1882, page 107, whereby Klamath County was created, was located at the town of Linkville; and that the term "At the county seat" restricted the erection of the courthouse to some tract within the original limits of Linkville, although the name of that town was changed to Klamath Falls. All that *Murdock* v. *Klamath County* decided was that block 10 in Hot Springs Addition was at Klamath Falls, equivalent in law to the phrase "at the town of Linkville" in the statute creating the county, and hence was an eligible site for a courthouse so far as mere location is concerned. In that litigation and the decision mentioned there was no reference to questions of title, expense or the like.

As regards mere location, therefore, the present case will be treated on the same basis as if both buildings in question were erected either on block 10 or block 35.

By giving rein to imagination, one might conceive of circumstances whereby it would be proper to continue the building of a courthouse on block 10, but we must be governed by the facts apparent by the record and by actualities rather than speculations.

1. We first consider the matter of title, both to block 35 and block 10. As to block 35, the east half thereof was conveyed by Brooks and wife to the county, substantially to be used for courthouse purposes, but the deed contains no reverter clause. There is no defeasance provided for by the terms of the instrument. For lack of that, the language of the deed does not constitute a condition subsequent. At the very most it cannot be considered more seriously than as a covenant, the breach of which would only be ground for the recovery of damages and would not work out the defeat of the title. This is the doctrine enunciated by this court by such cases as *Raley* v. *Umatilla County,* 15 Or. 172 (13 Pac. 890, 3 Am. St. Rep. 142); *Coffin* v. *Portland,* 16 Or. 77 (17 Pac. 580); *Portland* v. *Terwilliger,* 16 Or. 465 (19 Pac. 90); *Stansberry* v. *First M. E. Church,* 79 Or. 155 (154 Pac. 887). The deed to the west half of block 35 contains no conditions whatever. We conclude, therefore, that the county has an indefeasible title to block 35.

2-4. We turn now to the question of title to block 10. The only conveyance from the Klamath Development Co. affecting that property which was delivered to the grantee and so became effective was the one dated June 30, 1911, which contained the defeasance clause herebefore quoted conditioned for the building of the courthouse within five years, and stating that:

"The failure on the part of the party of the second part to comply with the foregoing conditions shall render this conveyance null and void and said land shall forthwith revert to the party of the first part."

By that deed the county indeed took title to block 10, but it was a title, defeasible by the very terms of the instrument creating it, and at the expiration of the five years prescribed in the deed, without the condition having been fulfilled, the grantor could have brought ejectment against the county to recover the property as taught in *Seeck* v. *Jakel,* 71 Or. 35 (141 Pac. 211, L. R. A. 1915A, 679). The deed of May 13, 1913, quitclaiming block 10 to the county in consideration of ten dollars cannot affect the title of the property because it was never delivered to the grantee. Neither were the conditions annexed to its delivery ever performed. At best, it constituted an offer when considered with the directions to the First Trust and Savings Bank, and until the county shows compliance with the conditions of that escrow direction, it cannot claim title to the land by virtue of that deed. Moreover, after the recall of the county judge who directed the surrender of that instrument and his quitclaim deed to the Klamath Development Co., returning to it the title of the property, we find in the record the agreement of May 1, 1918, which was signed by the present county judge, defendant here, and one of the commissioners, Burrell Short. In this instrument we find the recital,

"WHEREAS, the party of the first part is the owner of that certain lot, piece or parcel of land situate, lying and being in the City of Klamath Falls, in the County of Klamath, State of Oregon, known as and called Block Ten (10) in Hot Springs Addition to said City of Klamath Falls."

It is said in Section 797, Or. L.—

"A presumption, unless declared by law to be conclusive, may be overcome by other evidence, direct or indirect; but unless so overcome, the jury are bound to find according to the presumption."

In the succeeding section it is said,

"The following presumptions, and no others, are deemed conclusive: * *

"3. The truth of the facts recited from the recital in a written instrument, between the parties thereto, their representatives or successors in interest by a subsequent title; but this rule does not apply to the recital of a consideration."

The result is that the only title the county ever had to block 10, by virtue of the deed of June 30, 1911, was one which perished by operation of the condition subsequent in the instrument creating it, taken in connection with the assertion of title by the grantor. No other title ever accrued to the county. The conclusive nature of the recital in the contract of May 1, 1918, as between the parties, places the title to block 10 unreservedly in the Klamath Development Co. Thus we have arrived at a situation where the county has a tract of ground in use for many years and now being used for judicial and fiscal purposes of the county, claiming title thereto which is indefeasible; and on the other hand, there is another to which it has no title, but upon which it has made an abortive attempt to construct a courthouse.

5. Much is claimed for the order entered by the County Court on July 11, 1921, to which allusion has been made wherein was recited the history of the doings relative to the building of a new courthouse and declaring the policy of the court and designating the Hot Springs Courthouse as the permanent county courthouse for Klamath County. It is claimed that because that order has never been revoked nor appealed from or questioned in any manner, it settles

the question. It will be observed, however, that there are no parties to that proceeding. It is not apparent by whom an appeal or review could be prosecuted. It is mere fiat which does not function. The county has not complied with the defeasance clause of the original deed from the Development Company, and at present has no title to the property.

6. The fact that the county judge who participated in the making of the contract with Dougan for the erection of a new courthouse on block 35 was recalled and the present county judge elected in his place is stressed as overturning all that was done respecting the new courthouse on block 35 and as validating the transactions relating to block 10. This theory, however, is erroneous. Those who constituted the County Court when the contract was made with Dougan had authority to make that contract. It has been adjudicated to be valid and that Dougan performed it. While the recall election may be taken as an expression of disapproval of the policy of such a contract, yet it cannot invalidate it. The recall is political in its nature and not fiscal or financial. Moreover, the validity of the Dougan contract has been adjudicated and cannot be overturned by virtue of a past recall.

7. It is true that the County Court sitting for the transaction of county business has a very wide discretion and so long as that discretion is not abused, it does not lie in the power of other courts to review or overturn its decisions, but it is well settled that at the insistence of the taxpayer who foots the bills, county officials may be restrained from wasting the public funds. Such cases as *Sherman* v. *Bellows*, 24 Or. 553 (34 Pac. 549), and *Avery* v. *Job*, 25 Or. 512 (36 Pac. 293), teach this doctrine.

8. The defendants argued that the questions here involved are moot questions and that courts will not decide such questions. It is sound doctrine that a court will not decide anything except actual controversies and that when all ground for controversy is removed it will not consider past questions. The protection of the taxpayer, however, is not a moot question. There is hanging over his head the threat of the County Court to put more of his money which he pays as taxes into a scheme for the erection of a courthouse on land to which the county has no title and in the face of the fact that it already has a commodious courthouse ready for occupancy except for a few minor details, on realty to which it has a valid title. The interests of the taxpayer seem to have been lost sight of in all the proceedings that have come before this court and that question is not only not moot, but is insistent and pressing and actual.

9. The defendants urge that a great deal of the delay in building the Hot Springs building was caused by injunctions; but it is not apparent from the record but that the injunctions were rightful, in which case they would not excuse the defendants from the performance of the condition specified in the deed to block 10. The defendants also maintain that the new courthouse on block 35 is not completed. So far as that is concerned, it has been adjudicated that the contract was completed according to its terms, entitling Dougan to the payment of the contract price. It appears in evidence that it is suitable for and has been occupied for court purposes and that the roof has been repaired, indicating that it is suitable for use as a courthouse. The evidence is that certain vault doors in the old wooden courthouse have not been installed in the new building; also, the cells for the

jail have not been transferred to the new courthouse. It might even with propriety be contended that the chairs from the clerk's office have not been carried into the new building and many other captious objections might be urged. It is doubtful if any ordinary building could be so perfectly constructed but that something might be added either for strength or beauty, with beneficial results; but we are concerned with practical rather than speculative affairs. It is apparent that the building on the original block 35 is substantially completed and is available for occupancy as a county courthouse and that in addition to having no title to the grounds upon which it stands, the county has not completed a habitable courthouse on block 10.

Under all the conditions appearing in evidence, it is plain that it would be a waste of money, fraudulent in its effect upon the taxpayer, to pay for further construction on block 10. Too much money has been squandered there already. The people who pay the taxes ought not further to be oppressed in a contest which is characterized by captiousness, obstinacy and perversity of spirit. The Circuit Court was right in rendering a decree according to the prayer of the complaint and that decree is affirmed.        AFFIRMED.

Mr. Justice HARRIS concurs in the result.