Argued April 17, affirmed November 7, 1951

# GANGE ET UX. *v.* HAYES ET AL.
### 237 P. 2d 196

*William S. Fort* argued the cause for appellants. On the briefs were Husband, Fort & Johnson, of Eugene.

*Windsor Calkins* argued the cause for respondents. On the brief were Calkins & Calkins, of Eugene.

Before BRAND, Chief Justice, and HAY, ROSSMAN, LUSK and WARNER, Justices.

## WARNER, J.

This is a suit to quiet the title of the plaintiffs Gange in certain real property situated in Lane county, Oregon, hereinafter called Parcel C. The defendants Hayes answered, claiming a right to the title by reason of certain provisions in a deed, later referred to as the deed from the Diamond "B" Ranch to the Lewis-Peters Lumber Company. From a decree in favor of plaintiffs and adverse to the defendants, the defendants appeal.

In 1924, the Diamond "B" Ranch, an Oregon corporation, owned about 3,000 contiguous acres in Lane county, Oregon, which it operated as a stock ranch and which then included the parcel which is the subject of this litigation. For convenience we will hereinafter refer to the entire ranch, which was then operated as a unit, as Parcel A.

Parcel A, in the main, surrounds the town of Lowell in Lane county and has its southerly boundary for some miles along the north bank of the Willamette river. The main line of the Southern Pacific railroad crosses Parcel A in an easterly-westerly direction close to its southern boundary and on a line which generally reflects the meandering course of the river to the south. Approximately 200 acres of Parcel A lie between the south line of the railroad right-of-way and the north

bank of the river, and the rest of the land constituting the ranch lies north of the railroad.

At that time the Lewis-Peters Lumber Company was the owner of timber situated on the south bank of the Willamette river. It appearing advantageous to establish a sawmill reasonably close to its holdings and with the facilities of the railroad nearby, the lumber company negotiated with the owner of Parcel A for approximately 25 acres of Parcel A, which were south of and adjacent to the Southern Pacific right-of-way. As a result of these negotiations, the Diamond "B" Ranch on February 26, 1924, deeded 24.85 acres of Parcel A to the Lewis-Peters Lumber Company, a corporation. It is the reservations in this deed which are the focal point of our interest. In its essential provisions, it reads as follows:

"KNOW ALL MEN BY THESE PRESENTS, That Diamond 'B' Ranch, a corporation, duly organized and incorporated under the laws of the State of Oregon, in consideration of Five Hundred Dollars ($500.00) to it paid by Lewis-Peters Lumber Company, an Oregon corporation, does hereby grant, bargain, sell and convey unto the said Lewis-Peters Lumber Company, a corporation, its successors and assigns forever, the following described piece or parcel of real estate lying and being in the county of Lane and the State of Oregon, to wit:

"* * * [Description by metes and bounds of a parcel of land containing 24.85 acres in Lane county, Oregon, and hereinafter referred to as Parcel B.]

"Together with the tenements, hereditaments and appurtances thereunto belonging, or in anywise appertaining; and also all its estate, right, title and interest, at law and equity therein and thereto.

"TO HAVE AND TO HOLD THE SAME to the said Lewis-Peters Lumber Company, its successors and assigns forever. And the said grantor

does covenant to and with the said grantee, and its legal representatives and assigns forever, that said corporation is lawfully seized in fee simple of the above granted premises, and its successors shall, warrant and defend the same to the said Lewis-Peters Lumber Company, its successors and assigns forever, against the lawful claims and demands of all persons whomsoever.

"As an additional consideration for this deed, that the Diamond 'B' Ranch, or its assigns, shall have the privilege of crossing and recrossing this property on established roads, without interference, in the regular conduct of its business, and To also have the privilege of loading any materials, with the exception of lumber cut by another mill, in the way of timber, agricultural products, or cattle, that might be taken from the properties owned by the Diamond 'B' Ranch, or its successors or assigns, at any time on cars located on any private sidetracts [sic] now installed or to be later installed on this property.

"As a further consideration, it is understood and agreed, that if the Lewis-Peters Lumber Company, or its successors or assigns, should at any time or for any reason, cease operation of its lumbering or planing mill industries located on this property for a period of twenty four consecutive months, the Diamond 'B' Ranch at its own option to be exercised, can demand and shall receive a Warranty Deed back from the Lewis-Peters Lumber Company, its successors or assigns, for the above described property upon the payment of the original purchase price of Five Hundred Dollars ($500.00), less the annual rental of One Hundred Dollars ($100.00) per year, for the length of time title to the property as above described stands as a matter of record in the name of the Lewis-Peters Lumber Company, or its successors or assigns: but in no case shall the rental exceed the original purchase price of the property."

As we advance in the opinion, we will refer to the reservation in the deed beginning with the words, "As an additional consideration for this deed, that the Diamond 'B' Ranch, or its assigns, shall have the privilege of crossing and recrossing this property * * *," as the "first reservation"; and refer to the other reservation beginning with the words, "As a further consideration, it is understood and agreed, that if the Lewis-Peters Lumber Company * * * cease operation * * *," as the "second reservation."

The lumber company upon receipt of the deed of February, 1924, went into possession and constructed and operated a sawmill on Parcel B to and until sometime in February, 1943, when it forever ceased the "operation of its lumber or planing mill industries" located on Parcel B and at the same time conveyed Parcel B to plaintiffs' predecessors in title.

On the 28th day of April, 1945, the Steinkes, the then owners of Parcel B, carved from that parcel a unit of land with an area of approximately eight acres, which we designate as Parcel C, and conveyed the same by warranty deed to the plaintiffs, John A. Gange and Gretta C. Gange, his wife, who are now in possession and claim a fee simple title thereunder unencumbered by any of the reservations found in the deed from the ranch company to the lumber company given in February, 1924.

We turn now to the chain of title as asserted by the defendants Hayes.

On June 30, 1947, the Doutys, as successors to the title of all the remaining property in Parcel A, by warranty deed conveyed all their title in Parcel A to the defendants Hayes, excepting therefrom Parcel B, but without any reference to the reservations contained in

the deed of February, 1924, from the ranch company to the lumber company.

The last instrument of interest in the order of its execution is a quitclaim deed from the Diamond "B" Ranch to the defendants Hayes dated March 25, 1948, quitclaiming such interest as it then had in Parcel B.

The property in which the plaintiffs seek to have title quieted is Parcel C. The defendants in their further and separate defense to plaintiffs' complaint assert title as successors in interest to Parcel A and claim that, by reason thereof, they are the owners of the entire area comprehended by Parcel B, including Parcel C as a prior unit thereof. The defendants rest their claim of title to Parcel B upon the second reservation found in the deed of February, 1924, and support it with the assertions that when the Lewis-Peters Lumber Company ceased operating the lumber and planing industries located upon Parcel B and abandoned its further use for such purposes for a period of more than 24 consecutive months thereafter, the property reverted to defendants, as the successors in interest to the Diamond "B" Ranch.

The matter of paramount interest centers in the second reservation of the deed. We will, therefore, give it our first attention.

If the second reservation can be interpreted as contended for by the defendants, plaintiffs' title to Parcel C must fail; but, on the other hand, if it is construed in either of the ways argued for by the plaintiffs, then defendants must retire in defeat.

The importance of this provision of the deed warrants repeating it again, so that attention may be centered upon its precise language and its real purpose

and its legal significance better examined and understood. It reads:

"As a further consideration, it is understood and agreed, that if the Lewis-Peters Lumber Company, or its successors or assigns, should at any time or for any reason, cease operation of its lumbering or planing mill industries located on this property for a period of twenty four consecutive months, *the Diamond 'B' Ranch at its own option to be exercised, can demand and shall receive a Warranty Deed back from the Lewis-Peters Lumber Company,* its successors or assigns, for the above described property upon the payment of the original purchase price of Five Hundred Dollars ($500.00), less the annual rental of One Hundred Dollars ($100.00) per year, for the length of time title to the property as above described stands as a matter of record in the name of the Lewis-Peters Lumber Company, or its successors or assigns: but in no case shall the rental exceed the original purchase price of the property." (Italics ours.)

It is defendants' position that the foregoing clause creates an estate upon a conditional limitation and that the cessation of "the lumbering or planing mill industries located on this property [Parcel B] for a period of twenty four consecutive months" worked a breach of the condition resulting in a transfer of all the original rights of the grantor Diamond "B" Ranch to the defendants.

The plaintiffs, to the contrary, urge that the clause last referred to is either a condition subsequent or an option, and that if either of the constructions of the second reservation, as contended for by them, is found to be correct, defendants are not entitled to claim any interest in their property by reason thereof.

When examining conditions in a given instrument, it is not always an easy matter to resolve quickly or

with certainty the difference between a conditional
limitation and a condition subsequent and say with
persuasive positiveness that the given language found
in a conveyance is of one kind or the other. Such a
problem was before the court in *Wagner v. Wallowa
County*, 76 Or. 453, 464, 148 P. 1140, L.R.A. 1916F
303, where Mr. Justice BURNETT supplied the tests of
difference between a conditional limitation and a con-
dition subsequent in the following language:

> "* * * the touchstone is found in the determina-
> tion of whether the estate passed out of the grantor
> to be returned upon the happening of certain events
> or whether but part of the estate was separated
> from the owner. In the former instance the result
> is a condition subsequent, requiring some affirma-
> tive act of the grantor or those who represent him
> as heirs for the purpose of regaining the estate.
> In the latter, where less than the fee simple has
> gone from the grantor, it is denominated an estate
> upon conditional limitation, and contains within
> itself the elements of its own dissolution, so that
> it returns spontaneously to the grantor upon the
> happening of the event. Under a condition subse-
> quent there remains in the grantor no estate what-
> ever, but only a chose in action which is personal
> to himself and cannot be granted to another."

As a matter of convenience to our further consid-
eration of the legal character of the second reservation
of the deed now before us, we resolve the essence of
Mr. Justice BURNETT's distinctions into the form of two
test questions as follows: (1) Did all of the estate of
the grantor Diamond "B" Ranch in its deed of Febru-
ary 26, 1924, pass from it, or did it retain a part of
the fee? (2) Under the second reservation will the
estate, upon the happening of the future events therein
stipulated, revert to the Diamond "B" Ranch spon-

taneously and without any act upon its part or, to the contrary, does the language of that reservation require some affirmative act by the grantor at that time to regain the estate which it passed under the deed?

Applying the first test, we find that the granting clause of the deed of February 26, 1924, operated to convey a fee simple title to the grantee Lewis-Peters Lumber Company. In the words of the conveyance, it passes "all its estate, right, title and interest, at law and equity therein and thereto," referring as it does to real property which we have elected to call Parcel B. See *Wagner v. Wallowa County,* supra, at page 465. The warranty clause following gives emphasis to this conclusion.

In the deed under examination, we do not find any words or phrases commonly employed in deeds seeking to create conditions subsequent or conditional limitations. To exemplify what we mean in so saying, we refer to the deed before the court in the Wagner case, where we read: "* * * this conveyance is made and accepted on condition" that the property therein described should be used for a particular purpose "and for no other purpose; and if not so used for such purpose, the title to said real estate shall revert to the grantors herein," phrases which, when read in their context, immediately suggest that some kind of a conditional estate is created thereby. We hasten to add, however, that in employing the foregoing words and phrases from the deed in the Wagner case, we do not mean to imply that they are, per se, words of art legally necessary to support a condition subsequent in a conveyance designed to achieve that result, as they did in the deed under consideration in the Wagner case.

■ In any event to create a condition in a grant, apt and appropriate words should always be used. See *Raley v. Umatilla County*, 15 Or. 172, 179, 13 P. 890, 3 Am. St. Rep. 142, for suggested words of that character.

Not only do we remark on the absence of words and phrases usually employed to create a conditional estate, but we also note that the deed in no way limits the grantee's use of the premises, breach of which might operate to warrant a claim of reverter in the grantor. The reference to a possible cessation of the grantee's operation of its lumber mill is merely to establish the time when grantor's right to redeem the property by repurchase will accrue, if grantor elects to assert that right. Moreover, there is no defeasance provided by the terms of the instrument, the lack of which voids its character as a condition subsequent. *Ward v. Klamath County*, 108 Or. 574, 580, 218 P. 927.

■■ "Conditions subsequent are not favored in law, and are to be strictly construed, because they tend to destroy estates, and generally all doubts are resolved against restrictions on the use of property by the grantee or devisee"; and a deed will not be construed to create an estate on condition or limitation unless the language imports a condition or limitation, or unless the intent to create a conditional limitation is clearly indicated. 4 Thompson, Real Property, 571, 708, §§ 2044, 2170.

■ We are of the opinion that the grantor's entire title and estate in Parcel B passed to the grantee by the deed of February 26, 1924. This conclusion relative to the first test above is sufficient in and of itself to negative defendants' representation that the second reservation created a conditional limitation and makes

the application of our second test unnecessary because the language employed in the second reservation clearly contemplates some affirmative action on the part of the grantor before it can enjoy the privileges contemplated. Under the most tortured construction, it cannot be said that the estate conveyed "contains within itself the elements of its own dissolution, so that it returns spontaneously to the grantor." *Wagner v. Wallowa County*, supra, 76 Or. 464.

Although we hold that the second clause of reservation does not give rise to a conditional limitation, we are also persuaded that it cannot be denominated a condition subsequent.

The plaintiffs themselves apparently were not certain whether the second reservation was a condition subsequent for they suggest, as we have heretofore noted, that if it is not a condition subsequent, then it is an option.

■■ When the terms of the grant admit of any other reasonable interpretation, they will not be held to create an estate upon condition. *City of Portland v. Terwilliger,* 16 Or. 465, 468, 19 P. 90; *Raley v. Umatilla County,* supra, at page 180. Moreover, where there is a possibility of two constructions necessitating a choice between them, that is, between one favoring conditions with reverter and one favoring a repurchase option, the rules of construction dictate that the choice shall be resolved in favor of the option. See 4 Restatement, Property, 2325, § 394, where the rule is stated as follows:

"If the language and circumstances of a conveyance of an estate in fee simple are otherwise reasonably susceptible of two constructions, under one of which it creates either a possibility of reverter or a power of termination * * * and under

the other of which it creates an option to repurchase * * * the latter of these two constructions is preferred. The fact that the exercise of the reserved privilege requires the parting with money or other consideration, by the reserving conveyor is sufficiently indicative of the intent of the conveyor to create an option * * *."

The nature of a contract as an option is to be determined not by the name which the parties have given it but by the nature of the obligation it imposes. 12 Am. Jur., Contracts, 525, § 27. We, therefore, look to *Strong v. Moore,* 105 Or. 12, 21, 207 P. 179, 23 A.L.R. 1217, where this court defined an option as follows:

"An option is simply a contract by which an owner agrees that another shall have the privilege of buying his property at a fixed price and within the time expressly or impliedly prescribed by the writing. The optionee is not obliged to buy, although he may, if he chooses, elect to buy."

Deeds containing optional rights in the grantor to repurchase all or any part of the property conveyed are not unique to the law and are not infrequent in commerce. A fairly early example of such an instrument will be found in the well-known English case of *London and South Western Railway v. Gomm,* 20 Ch. Div. 562, 51 L.J.R. (N.S.) 530, 46 L.T.R. (N.S.) 449, 30 Wkly. Rep. 620. Also see 1 Corbin, Contracts, 885, § 266. Transactions wherein the seller reserved optional rights to repurchase the thing sold are not novel in this jurisdiction. See *House v. Jackson,* 24 Or. 89, 32 P. 1027; *Johnston v. Wadsworth,* 24 Or. 494, 34 P. 13; *Leadbetter v. Price,* 103 Or. 222, 202 P. 104.

Such repurchase options, when incorporated in a conveyance, are in the nature of a continuing offer and are sometimes spoken of as a right of redemption.

James, Law of Option Contracts, 3, § 101. An option in a deed has also been held to partake of the nature of an executory limitation, vesting no interest in the land and consisting of an irrevocable restraint on its alienation, although the option was in the form of a right to the grantor in the deed by which the land was conveyed. *Woodall v. Bruen,* 76 W. Va. 193, 85 S.E. 170.

We now revert to our definition of an option found in the Strong case and apply it to the language employed in the second reservation; and when we do, we find that the grantee, as owner of Parcel B, did by its acceptance of the deed commit itself to the Diamond "B" Ranch so that the grantor might "at its own option" repurchase Parcel B at the price in the deed stipulated, at any time after the happening of a certain event, i.e., after the grantee had ceased "its lumbering or planing mill industries located on this property [Parcel B] for a period of twenty four consecutive months." Tested by the definition of an option found in the Strong case, the conclusion is inescapable that the second reservation in the deed creates an option to repurchase.

██ This last conclusion, standing alone, does not, however, work a solution of the respective contentions of the parties. An option to be effective must be an option of vitality. If a repurchase option in a conveyance of this kind is to have that quality, it must not stand as a restraint against alienation or be obnoxious to the rule against perpetuities.

When we re-examine the second reservation in the light of this last observation, we particularly mark two contingencies there found, both indefinite as to the possibility of the happening of certain events therein

provided for and suggesting uncertainty and remoteness as to the time of their happening, if indeed they would ever come into being. We refer first to the first scheduled event which would give rise to the right to exercise the option. This right, if it comes into being, does so only when the grantee "at any time" in the indefinite future ceases to operate its mill for a period of 24 consecutive months. The other stipulated event of uncertain timing is dependent upon the happening of the first, that is, the cessation of milling operations for a period not less than therein provided. This second event would be the time when the option must be exercised after the right to exercise it first accrues; but here we find no limitation of time in which to accept and act upon the then accrued privilege of repurchase. As this provision is drawn in the deed, the grantor and its successors could, at any future date of their selection, elect to repurchase the property on the relatively modest terms therein provided.

In its terms as drawn, the second reservation is not only a restraint against alienation but, because of its indefinite future dates of operation, it is likewise a violation of the rule against perpetuities. A condition in restraint of alienation, general as to time, is void. 4 Thompson, Real Property, 617, § 2076. Also see *Friswold v. United States Nat. Bank*, 122 Or. 246, 257 P. 818. A clear statement of the rule applicable here is found in 41 Am. Jur., Perpetuities and Restraints on Alienation, 84, § 41, where it is said:

"Options given to purchase real estate are regarded as having the effect of creating future interests depending on the contingency of the exercise of the option. Hence, if there is a possibility that the option may not be exercised within the limits of time allowed by the rule against per-

petuities, the option is void as a violation of this rule. Such is the case where no time is fixed within which the option must be accepted.''

Also see 4 Restatement, Property, 2325, § 394; and annotations and editorial notes in 162 A.L.R. 581, 594.

Our conclusion must necessarily be that the second reservation is void and of no effect here.

We now turn to consideration of the first reservation found in the deed reading:

"As an additional consideration for this deed, that the Diamond 'B' Ranch, or its assigns, shall have the privilege of crossing and recrossing this property on established roads, without interference, in the regular conduct of its business, and To also have the privilege of loading any materials, with the exception of lumber cut by another mill, in the way of timber, agricultural products, or cattle, that might be taken from the properties owned by the Diamond 'B' Ranch, or its successors or assigns, at any time on cars located on any private sidetracts [sic] now installed or to be later installed on this property.''

There is no controversy between the parties that this creates an easement. The issue is whether the rights-of-way thereby conferred still exist so as to encumber plaintiffs' title, if, in fact, there ever were such highways across Parcel C. It is plaintiffs' position that there were no established roads and, if so, that no effort was made by the grantor or its successors in interest to exercise the rights conferred for a quarter of a century; and, therefore, all the rights, if any, created thereby are terminated. The defendants vigorously assert that the easement privileges still subsist, and this might be true if it is first shown that any were across what is now Parcel C.

Preliminary to a further discussion of this aspect of the appeal, we note that the crossing and recrossing provided for is on ''established roads.'' The plaintiffs in their brief stress this phrase by italicization but assign no special reason therefor. We, too, think the words are significant but perhaps not for the same reasons entertained by plaintiffs.

''Established roads'' in the legal sense usually mean roads established by authority of law (15 Words & Phrases 271) and which, of course, if established by law, would be free to the use by the public for the purposes of their establishment. Here we cannot assign that meaning for obviously there is no need for the reservation of a right of easement over a roadway established by public authority for public use. We hold that ''established roads,'' as used in the instant deed, are such roads as were existent and known to the parties at the time of the deed's execution as roads within the boundaries of Parcel A then commonly used by the grantor for the purposes for which the reservation of easement was then made.

It should also be observed that the right to cross and recross Parcel B on ''established roads'' relates only to such roads as were within the boundaries of that parcel wherever they lay at the time of the execution of the deed of February, 1924; and, therefore, unless it can be shown that any part thereof then crossed Parcel C, a lesser unit of Parcel B, the reservation of easement now before us is not one of present interest in this litigation because here we are concerned only with the title to Parcel C. If, on the other hand, it can be demonstrated to the court's satisfaction that all or any part of the ''established roads,'' as they existed on February 26, 1924, crossed what is now

Parcel C, then we are interested only in determining to what extent such part of the easement encumbers plaintiffs' title to that parcel.

It is the defendants who make the claim of easement under the first reservation, and, therefore, the burden is upon them to prove what, in fact, were the "established roads" on February 26, 1924, and the location of that part of them which crossed Parcel C, if indeed they ever crossed it. This burden the defendants have failed to sustain. Such evidence as was offered was extremely meager and particularly vague and indefinite as to the particular location of any given roadway which they or their witnesses referred to. No one attempted to say that any given roadway referred to by them in any way crossed the property of plaintiffs or made any representations that such a road or part of an "established road" existed in February, 1924. The nearest approach to any helpful evidence, such as it is, was the positive statement of the plaintiff Mrs. Gange, who testified that there was no roadway across the eight acres constituting Parcel C when plaintiffs went into possession in 1945. In this state of the record, the lower court was justified in holding that defendants had no rights in Parcel C under the first reservation, which they could successfully assert against the plaintiffs here.

The decree of the lower court is affirmed.